# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,
v.
ERIC JASON FRAHS,
Defendant and Appellant.

S252220

Fourth Appellate District, Division Three
G054674

Orange County Superior Court
16CF0837

June 18, 2020

Chief Justice Cantil-Sakauye authored the opinion of the Court, in which Justices Chin, Corrigan, Liu, Cuéllar, Kruger, and Groban concurred.

PEOPLE v. FRAHS

S252220


Opinion of the Court by Cantil-Sakauye, C. J.


In June 2018, the Legislature enacted Penal Code[1] sections 1001.35 and 1001.36, which created a pretrial diversion program for certain defendants with mental health disorders. (Stats. 2018, ch. 34, § 24.) We granted review in this matter to determine whether the mental health diversion statute applies retroactively to cases in which the judgment is not yet final, and whether the Court of Appeal erred when it conditionally reversed defendant Eric Jason Frahs's convictions and sentence and remanded this case for a diversion eligibility hearing.

Here, defendant stole two beverages from a convenience store and threw rocks at passing cars. At trial, he introduced evidence that he suffers from a form of schizophrenia. After defendant was convicted, and while his appeal was pending, the mental health diversion statute came into effect. The Court of Appeal concluded that section 1001.36, which contains the diversion measure's substantive provisions, applies retroactively to all cases not yet final on appeal before the statute became effective, including defendant's case. It conditionally reversed defendant's convictions and sentence, and remanded the matter to the trial court with instructions to

_____

[1]     All subsequent statutory citations are to the Penal Code unless otherwise indicated.

1

conduct a diversion eligibility hearing. (*People v. Frahs* (2018) 27 Cal.App.5th 784 (*Frahs*).)

In *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), we held that an amendatory statute lessening punishment for a crime was presumptively retroactive and applied to all persons whose judgments were not yet final at the time the statute took effect. In *People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299 (*Lara*), we applied the *Estrada* rule to legislation that mitigated the possible punishment for a class of persons. The statute here is similar to the scheme we considered in *Lara*, in that section 1001.36 by design and function provides a possible ameliorating benefit for a class of persons — namely, certain defendants with mental disorders — by offering an opportunity for diversion and ultimately the dismissal of charges. Moreover, neither the text nor the history of section 1001.36 clearly indicates that the Legislature intended that the *Estrada* rule would not apply to this diversion program. Therefore, consistent with our decision in *Lara*, we conclude that *Estrada*'s inference of retroactivity applies. We also agree with the Court of Appeal's determination that defendant is entitled to a limited remand for the trial court to decide whether he should receive diversion under section 1001.36. We express no view regarding whether defendant will be able to show eligibility on remand or whether the trial court should exercise its discretion to grant diversion if it finds him eligible.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In March 2016, defendant entered a small market in Santa Ana. The store owner, remembering that defendant had tried to steal a pack of cigarettes one week prior, told defendant to leave. Defendant exited the store, picked up rocks, and threw

them at passing cars. He struck the windshield of one car, shattering the glass. Defendant then reentered the store and grabbed a can of beer and an energy drink. The store owner and his son stood at the front door to block defendant from leaving. Defendant rushed toward the door, punched the owner in the head, and eventually pushed his way through. The store owner and his son detained defendant in the parking lot and called the police.

Defendant was charged with two counts of second degree robbery (Pen. Code, §§ 211, 212.5, subd. (b)) and one felony count of throwing a substance at a motor vehicle with intent to cause injury (Veh. Code, § 23110, subd. (b)). For sentencing purposes, it was alleged that defendant had suffered a prior serious felony conviction. (Pen. Code, § 667, subd. (a)(1).)

Defendant testified in his own defense. He stated that he experienced hallucinations and delusions beginning in his early twenties and had been hospitalized at least eight times. In 2015, a conservator was appointed to care for him for approximately seven months. Defendant had stopped taking his prescribed medications four days before the incident at the Santa Ana market and was experiencing severe hallucinations and delusions during that time. He testified that he thought an angel flew by on a horse and talked to him just before he entered the market.

A clinical and forensic psychologist also testified on defendant's behalf. Based on his review of a hospital report detailing defendant's confinement and his conversations with defendant and his parents, the psychologist stated that defendant had been diagnosed with schizoaffective disorder, which is "a combination of schizophrenia and bipolar disorder,"

and was very ill and unstable. He also concluded that defendant had been suffering from a psychotic episode and was not in touch with reality in the days preceding the incident at the Santa Ana market. He testified that defendant's behavior at the market was a byproduct of a psychotic episode.

The jury found defendant guilty of two counts of second degree robbery and of the lesser included misdemeanor offense of throwing a substance at a motor vehicle without intent to cause injury. Following a bench trial on the prior serious felony conviction allegation, which the trial court found to be true, defendant was sentenced to nine years in prison.

When defendant's appeal was pending, the Legislature enacted sections 1001.35 and 1001.36 as part of Assembly Bill No. 1810 (2017-2018 Reg. Sess.) (Assembly Bill 1810), an omnibus budget bill. (Stats. 2018, ch. 34, § 24.) Section 1001.36 gives trial courts the discretion to grant pretrial diversion for individuals suffering from certain mental health disorders. (§ 1001.36, subd. (a).) As part of the budget bill, the diversion statute became effective immediately.

The Court of Appeal concluded that section 1001.36 applies retroactively to all nonfinal judgments. It also determined that defendant is entitled to a limited remand because his case is not yet final on appeal and the record demonstrates that he appears to satisfy at least one of the statute's threshold eligibility requirements, a diagnosed and qualifying mental disorder. (§ 1001.36, subd. (b)(1)(A).) On these grounds, the court conditionally reversed defendant's conviction and sentence and remanded the matter to the trial court to conduct a mental health diversion eligibility hearing under section 1001.36. (*Frahs*, *supra*, 27 Cal.App.5th at p. 792.)

## II. DISCUSSION

### A. The Mental Health Diversion Statute

Section 1001.36 authorizes a pretrial diversion program for defendants with qualifying mental disorders. The statute defines "'pretrial diversion'" as "the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment . . . ." (§ 1001.36, subd. (c).) The stated purpose of the diversion statute "is to promote all of the following: [¶] (a) Increased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety. [¶] (b) Allowing local discretion and flexibility for counties in the development and implementation of diversion for individuals with mental disorders across a continuum of care settings. [¶] (c) Providing diversion that meets the unique mental health treatment and support needs of individuals with mental disorders." (§ 1001.35, subds. (a)-(c).)

As originally enacted, section 1001.36 provided that a trial court may grant pretrial diversion if it finds all of the following: (1) the defendant suffers from a qualifying mental disorder; (2) the disorder played a significant role in the commission of the charged offense; (3) the defendant's symptoms will respond to mental health treatment; (4) the defendant consents to diversion and waives his or her speedy trial right; (5) the defendant agrees to comply with treatment; and (6) the defendant will not pose an unreasonable risk of danger to public safety if treated in the community. (Former § 1001.36, subd. (b)(1)-(6).) Section 1001.36 was subsequently amended by Senate Bill No. 215 (2017-2018 Reg. Sess.) (Senate Bill 215) to

specify that defendants charged with certain crimes, such as murder and rape, are ineligible for diversion. (§ 1001.36, subd. (b)(2), as amended by Stats. 2018, ch. 1005, § 1.)

If the defendant makes a prima facie showing that he or she meets all of the threshold eligibility requirements and the defendant and the offense are suitable for diversion, and the trial court is satisfied that the recommended program of mental health treatment will meet the specialized mental health treatment needs of the defendant, then the court may grant pretrial diversion. (§ 1001.36, subds. (a), (b)(3) & (c)(1).) The maximum period of diversion is two years. (*Id.*, subd. (c)(3).) If the defendant is subsequently charged with an additional crime, or otherwise performs unsatisfactorily in the assigned program, then the court may reinstate criminal proceedings. (*Id.*, subd. (d).) "If the defendant has performed satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion" and "the arrest upon which the diversion was based shall be deemed never to have occurred." (*Id.*, subd. (e).)

## B. Retroactive Application of Ameliorative Criminal Laws

Generally, statutes are presumed to apply only prospectively. (*Lara, supra*, 4 Cal.5th at p. 307.) However, this presumption is a canon of statutory interpretation rather than a constitutional mandate. (*Ibid.*) Accordingly, "the Legislature can ordinarily enact laws that apply retroactively, either explicitly or by implication." (*Ibid.*) Courts look to the Legislature's intent in order to determine if a law is meant to apply retroactively. (*Ibid.*)

In *Estrada*, *supra*, 63 Cal.2d 740, we held that amendatory statutes that lessen the punishment for criminal conduct are ordinarily intended to apply retroactively. (*Id.* at pp. 744-745.) In endeavoring to ascertain the legislative intent in enacting such a statute, we found "one consideration of paramount importance." (*Id.* at p. 744.) We explained: "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final. This intent seems obvious, because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology." (*Id.* at p. 745.)

We reasoned that " '[a] legislative mitigation of the penalty for a particular crime represents a legislative judgment that the lesser penalty or the different treatment is sufficient to meet the legitimate ends of the criminal law. Nothing is to be gained by imposing the more severe penalty after such a pronouncement; the excess in punishment can, by hypothesis, serve no purpose other than to satisfy a desire for vengeance. As to a mitigation of penalties, then, it is safe to assume, as the modern rule does, that it was the legislative design that the lighter penalty should be imposed in all cases that subsequently

reach the courts.' " (*Estrada, supra,* 63 Cal.2d at pp. 745-746, quoting *People v. Oliver* (N.Y. 1956) 134 N.E.2d 197, 202.)

"*Estrada* stands for the proposition that, 'where the amendatory statute mitigates punishment and there is no saving[s] clause, the rule is that the amendment will operate retroactively so that the lighter punishment is imposed.' " (*People v. Nasalga* (1996) 12 Cal.4th 784, 792 (*Nasalga*); see also *People v. Conley* (2016) 63 Cal.4th 646, 657 (*Conley*) ["The *Estrada* rule rests on an inference that, in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not"].) If there is no express savings clause, the statute must demonstrate contrary indications of legislative intent " 'with sufficient clarity' " in order to rebut the *Estrada* rule. (*Conley*, at p. 657; *Nasalga*, at p. 793 [*Estrada* rule not implicated when "the Legislature clearly signals its intent to make the amendment prospective, by the inclusion of either an express saving[s] clause or its equivalent"].)

We have applied *Estrada*'s inference of retroactivity to statutes governing penalty enhancements, as well as statutes governing substantive offenses. (E.g., *People v. Wright* (2006) 40 Cal.4th 81, 94-95 [newly enacted affirmative defense to transporting marijuana applies retroactively]; *Tapia v. Superior Court* (1991) 53 Cal.3d 282, 301 [statute specifying that certain death-penalty qualifying special circumstances must be intentional applies retroactively]; *In re Kirk* (1965) 63 Cal.2d 761, 762-763 [amendment increasing dollar amount concerning insufficient funds checks applies retroactively].)

Significantly, we have also applied the *Estrada* rule to statutes that merely made a reduced punishment *possible*. (*Lara, supra*, 4 Cal.5th at p. 303; *People v. Francis* (1969) 71 Cal.2d 66, 76 (*Francis*) [modified treatment of marijuana possession from straight felony to either felony or misdemeanor].) In *Francis*, we inferred that the Legislature intended retroactive application of an amendment that allowed a trial court to exercise its sentencing discretion more favorably for individual defendants. (*Francis*, at p. 76.) We concluded that although the statute did not guarantee a lighter sentence — it instead granted trial courts discretion to impose a county jail term in lieu of imprisonment for possession of marijuana — the reasoning of *Estrada* applied in light of the Legislature's determination "that the former penalty provisions may have been too severe in some cases and that the sentencing judge should be given wider latitude in tailoring the sentence to fit the particular circumstances." (*Ibid.*)

More recently, in *Lara*, we determined that the *Estrada* rule applied to an amendatory act that "ameliorated the possible punishment for a *class of persons*." (*Lara, supra*, 4 Cal.5th at p. 308, italics added.) *Lara* concerned the retroactivity of Proposition 57 (Prop. 57, as approved by voters, Gen. Elec. (Nov. 8, 2016)) (Proposition 57), the relevant provisions of which prohibit prosecutors from directly filing charges against a minor in "adult" criminal court and give juvenile courts the sole discretion to determine, after conducting a transfer hearing, whether a minor can be prosecuted and sentenced as an adult. (*Lara*, at p. 303.) We explained that although Proposition 57 did not mitigate punishment for any particular crime, the *Estrada* inference of retroactivity nevertheless applied because the law "reduces the possible punishment for a class of persons, namely

juveniles." (*Lara*, at p. 303.) We noted that, given the significant distinctions between the juvenile justice system and the criminal justice system, "[t]he possibility of being treated as a juvenile in juvenile court — where rehabilitation is the goal — rather than being tried and sentenced as an adult can result in dramatically different and more lenient treatment." (*Ibid.*; see *id.* at pp. 306-307.) For example, " 'the impact of the decision to prosecute a minor in criminal court rather than juvenile court can spell the difference between a 16-year-old minor . . . being sentenced to prison for 72 years to life, or a discharge from the [Division of Juvenile Justice's] custody at a maximum of 23 years of age.' " (*Id.* at p. 308.) We concluded that the potential ameliorating benefit of remaining in the juvenile court system was analogous to the potential reduction in a criminal defendant's sentence in *Estrada* and *Francis*, and therefore the same inference of retroactivity should apply. (*Lara*, *supra*, 4 Cal.5th at pp. 308-309.)

We also determined that nothing in Proposition 57's text or ballot materials rebutted *Estrada*'s inference of retroactivity. (*Lara*, *supra*, 4 Cal.5th at pp. 303-304.) To the contrary, certain provisions of Proposition 57, including its stated purpose to " '[s]top the revolving door of crime by emphasizing rehabilitation, especially for juveniles' " and its instruction that the " 'act shall be liberally construed to effectuate its purposes,' " "support[ed] the conclusion that *Estrada*'s inference of retroactivity is not rebutted." (*Lara*, at p. 309.)

With this background in mind, we now consider whether section 1001.36 applies retroactively.

## C. The Mental Health Diversion Statute Applies Retroactively Because It Mitigates the Possible Punishment for a Class of Persons and There Is No Clear Contraindication of Legislative Intent

As noted, the Court of Appeal held that *Estrada*'s inference of retroactivity applies to section 1001.36. (*Frahs*, *supra*, 27 Cal.App.5th at p. 791.) It reasoned that, similar to the reforms adopted through Proposition 57, the statute "unquestionably" offers an " 'ameliorating benefit' " for a defendant diagnosed with a mental disorder to have the opportunity for diversion, and ultimately, a possible dismissal of the criminal charges. (*Ibid.*) The Court of Appeal also concluded that the statute's express purpose of promoting " '[*i*]*ncreased diversion* of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety' " indicated "the Legislature intended the . . . program to apply as broadly as possible." (*Ibid.*, quoting § 1001.35, subd. (a), italics in *Frahs*.)

The Court of Appeal rejected the People's argument that the statute's definition of " 'pretrial diversion' " as "the postponement of prosecution . . . at any point in the judicial process . . . until adjudication" (§ 1001.36, subd. (c)) demonstrated that the Legislature did not intend section 1001.36 to apply retroactively. (*Frahs*, *supra*, 27 Cal.App.5th at p. 791.) The appellate court explained: "The fact that mental health diversion is available only up until the time that a defendant's case is 'adjudicated' is simply how this particular diversion program is ordinarily designed to operate. Indeed, the fact that a juvenile transfer hearing under Proposition 57 ordinarily occurs prior to the attachment of jeopardy did not prevent the Supreme Court in *Lara* from finding that such

hearing must be made available to all defendants whose convictions are not yet final on appeal." (*Ibid.*)

We agree with the Court of Appeal.[2] The parties concur that section 1001.36, like Proposition 57, offers a potentially ameliorative benefit for a class of individuals — namely, criminal defendants who suffer from a qualifying mental disorder. On its face, the diversion statute states the legislative purpose "to promote . . . [¶] [i]ncreased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety" (§ 1001.35, subd. (a)), and the procedures instituted by the enactment carry the potential of substantial reductions in punishment for the aforementioned parties.

The pertinent circumstances here are like those involved in *Lara*, in that the possibility of being granted mental health diversion rather than being tried and sentenced "can result in dramatically different and more lenient treatment." (*Lara, supra*, 4 Cal.5th at p. 303.) A defendant who shows that he or

---

[2] Several published appellate decisions are in accord. (*People v. Burns* (2019) 38 Cal.App.5th 776, review granted Oct. 30, 2019, S257738 [§ 1001.36 applies retroactively]; *People v. Hughes* (2019) 39 Cal.App.5th 886, review granted Nov. 26, 2019, S258541 [same]; *People v. Weaver* (2019) 36 Cal.App.5th 1103, review granted Oct. 9, 2019, S257049 [same]; *People v. Weir* (2019) 33 Cal.App.5th 868, review granted June 26, 2019, S255212 [same].) Other Courts of Appeal have reached a different conclusion. (*People v. Lipsett* (2020) 45 Cal.App.5th 569, review granted May 13, 2020, S261323 [§ 1001.36 does not apply retroactively]; *People v. Khan* (2019) 41 Cal.App.5th 460, review granted June 26, 2019, S255212 [same]; *People v. Craine* (2019) 35 Cal.App.5th 744, review granted Sept. 11, 2019, S256671 [same].) As explained below (see pt. III, *post*), we will disapprove these contrary decisions.

she is eligible and suitable for diversion may be referred to a mental health treatment program designed to meet the defendant's specialized needs for up to two years. (§ 1001.36, subd. (c)(1).) If a defendant successfully completes diversion, the trial court "shall" dismiss the criminal charges and the "arrest upon which the diversion was based shall be deemed never to have occurred." (*Id.*, subd. (e).) Accordingly, the impact of a trial court's decision to grant diversion can spell the difference between, on the one hand, a defendant receiving specialized mental health treatment, possibly avoiding criminal prosecution altogether, and even maintaining a clean record, and on the other, a defendant serving a lengthy prison sentence. (See *Lara, supra,* 4 Cal.5th at p. 308.) Indeed, the People concede in their briefing that "mental health diversion has a potentially ameliorative effect: defendants who successfully complete the program would be able to have criminal charges wiped clean." Thus, the ameliorative nature of the diversion program places it squarely within the spirit of the *Estrada* rule.

Because it is undisputed that the diversion statute provides a possible benefit to a class of criminal defendants and the statute does not contain an express savings clause that limits the program to prospective-only application, the specific question before us boils down to whether the Legislature "clearly signal[ed] its intent" to overcome the *Estrada* inference that section 1001.36 applies retroactively to all cases not yet final on appeal. (*Nasalga, supra,* 12 Cal.4th at p. 793.)

We conclude that the text of the statute does not clearly signal such an intent. At the outset, we note that the statute contains language that could be read as supporting the expansive application of its provisions. The Court of Appeal reasonably regarded the statement of legislative purpose found

in section 1001.35, subdivision (a) as bolstering the conclusion "that the Legislature intended the mental health diversion program to apply as broadly as possible." (*Frahs*, *supra*, 27 Cal.App.5th at p. 791.) The breadth of the statute's statement of purpose — aimed to "[*i*]*ncrease*[] *diversion* of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system" (§ 1001.35, subd. (a), italics added) — is consistent with the retroactive application of the diversion scheme. This statement of purpose further "support[s] the conclusion that the *Estrada* inference of retroactivity is not rebutted" — that is, that the Legislature intended to apply the provisions of section 1001.36 to every case to which it constitutionally could apply. (*Lara*, *supra*, 4 Cal.5th at p. 309.) But even if this statement of purpose is disregarded, the statute does not plainly communicate an intent that its provisions would apply only prospectively.

On this subject, the People renew their argument that the statute's definition of "'pretrial diversion'" as "the postponement of prosecution . . . at any point in the judicial process . . . until adjudication" (§ 1001.36, subd. (c)) demonstrates that the Legislature intended to limit its application to cases that had not yet been adjudicated at the time of enactment, dispelling *Estrada*'s inference of retroactivity. The People acknowledge that "the language of section 1001.36 does not necessarily demonstrate an intent to foreclose diversion to all those who *committed* a crime prior to the effective date of the Act," but maintain that the phrase "until adjudication" expressly limits retroactive application of the statute to defendants whose cases had not yet been, in the People's words, "resolved by a trier of fact."

We are not persuaded. Like the Court of Appeal, we view the definition of "pretrial diversion" as simply reflecting the Legislature's intent regarding how the statute will generally operate when a case comes before the trial court after section 1001.36's enactment. In the ordinary course of procedure, a trial court determines whether a defendant is eligible for pretrial diversion before judgment is entered, and the defendant cannot be heard to seek such diversion afterward. Broadly consistent with this common feature of pretrial diversion, the statute before us provides that diversion is available "until adjudication" (§ 1001.36, subd. (c)), which the People construe as until the charge or charges against a defendant are resolved.[3] But that expectation regarding how the statute normally will apply going forward is quite different from the specific retroactivity question presented here, to which the *Estrada* inference applies.

So understood, we conclude that the "until adjudication" language included in section 1001.36, subdivision (c) is not a clear expression of the Legislature's intent to make the statute

---

[3] As suggested by the text, we have no occasion here to precisely define "until adjudication," as used in section 1001.36, subdivision (c), and our analysis should not be read as tacitly adopting the People's interpretation of this language.

solely prospective. (*Conley*, *supra*, 63 Cal.4th at pp. 656-657.)[4] Here, it is helpful to contrast this language in the diversion statute with the language in Proposition 47 (§ 1170.18, subd. (a), approved by voters, Gen. Elec. (Nov. 4, 2014) and amended by Stats. 2016, ch. 767, § 1, p. 5313) and the Three Strikes Reform Act of 2012 (Prop. 36, as approved by voters, Gen. Elec. (Nov. 6, 2012)). Both of these measures included specific resentencing provisions applicable to persons who had already been sentenced (§§ 1170.18, subd. (a), 1170.126, subd. (b)), and therefore overcame the inference of ameliorative retroactivity. (*People v. DeHoyos* (2018) 4 Cal.5th 594, 603; *Conley*, at p. 657.) Unlike these other measures, the "until adjudication" language within section 1001.36 does not " 'clearly signal[]' " the Legislature's intent to rebut the *Estrada* inference. (*Nasalga*, *supra*, 12 Cal.4th at p. 793.)

The People point to additional language in section 1001.36 that also supposedly indicates a legislative intent to apply the diversion statute prospectively only. They assert that the statutory provision permitting a trial court to "grant *pretrial* diversion to a defendant" (§ 1001.36, subd. (a), italics added) means that diversion is not available after trial. They similarly maintain that the threshold eligibility factor requiring a

---

[4] The People also emphasize that the assertedly limiting language in section 1001.36 comports with provisions found in other, similar diversion statutes. But this observation adds little to the People's argument regarding the intent behind section 1001.36. These other statutes simply define what pretrial diversion is and how it is generally supposed to operate: For example, "pretrial diversion refers to the procedure of postponing prosecution of an offense . . . at any point in the judicial process from the point at which the accused is charged until adjudication." (§ 1001.1; see also, e.g., § 1001.70, subd. (b).)

defendant to waive his or her right to a speedy trial (*id.*, subd. (b)(1)(D)) makes clear that the Legislature did not intend for diversion to be available to defendants whose trials had concluded. Again, we disagree. As with the "until adjudication" phrasing, this language simply explains how the mental health diversion program will ordinarily function: In the normal course of operations, a trial court would determine before trial whether a defendant is eligible for pretrial diversion. This phrasing does not demonstrate a legislative intent to "modify, limit, or entirely forbid the retroactive application of ameliorative criminal-law amendments" (*Conley*, *supra*, 63 Cal.4th at p. 656) "with sufficient clarity that a reviewing court can discern and effectuate it" (*In re Pedro T.* (1993) 8 Cal.4th 1041, 1049).

Overall, on the question of retroactivity we regard the provisions of section 1001.36 as comparable to the statutory language involved in *Lara*, in which we concluded that the electorate intended Proposition 57 to apply retroactively to all cases not yet final on appeal. (*Lara, supra*, 4 Cal.5th at p. 304.) Like section 1001.36, Proposition 57 contains language regarding matters of timing and procedure, including a requirement that the prosecutor file a transfer motion "prior to the attachment of jeopardy." (Welf. & Ins. Code, former § 707, subd. (a), added by Prop. 57.) Notwithstanding these provisions, we determined that "nothing in Proposition 57's text or ballot materials rebuts th[e] inference" of retroactivity. (*Lara*, at pp. 303-304; see *id.* at pp. 308-309.) Here too, we do not divine from section 1001.36's "until adjudication" language, or the other provisions cited by the People, a clear indication of legislative intent to apply the statute prospectively only. Like Proposition 57, in providing instructions regarding how its

provisions are meant to operate generally, section 1001.36 does not rebut the *Estrada* inference of ameliorative retroactivity.

Our conclusion finds additional support in *Francis*. There, the People maintained that " 'the very nature' of the amendment [giving trial courts discretion to impose only local jail time for possession of marijuana] leads to the conclusion that it was only intended to apply to cases where sentencing occurred after the effective date of the amendment." (*Francis, supra,* 71 Cal.2d at p. 77.) In rejecting this argument, we emphasized that we had previously declined to interpret statutory amendments vesting discretion in the trial court as an indication that they were intended to be limited to prospective application. (*Id.* at p. 78, citing *In re Corcoran* (1966) 64 Cal.2d 447 and *In re Ring* (1966) 64 Cal.2d 450.)

Moreover, we are mindful that the Legislature "is deemed to be aware of existing laws and judicial constructions in effect at the time legislation is enacted." (*People v. Weidert* (1985) 39 Cal.3d 836, 844.) Four months before the Legislature enacted section 1001.36, we decided in *Lara* that a statute that reduced the possible punishment for a class of persons applied retroactively. Our prior decisions have also made clear that in order to rebut *Estrada*'s inference of retroactivity concerning ameliorative statutes, the Legislature must "demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it." (*In re Pedro T., supra,* 8 Cal.4th at p. 1049; see also *Conley, supra,* 63 Cal.4th at pp. 656-657; *Nasalga, supra,* 12 Cal.4th at p. 793.) Thus, when the Legislature enacted section 1001.36, it was aware that if it did not want the statute to apply retroactively to nonfinal judgments, it needed to clearly and directly indicate such intent in order to rebut *Estrada*'s inference of retroactivity. The text

18

relied upon by the People does not establish a contrary legislative intent.

Nor do we perceive in the legislative history a clear indication that the Legislature did not intend for the statute to apply retroactively. Citing an Assembly report, the People suggest that the Legislature was motivated by potential cost savings in enacting section 1001.36, a motivation assertedly inconsistent with retroactive application. (Assem. Conc. Sen. Amends. to Assem. Bill No. 1810 (2017-2018 Reg. Sess.) as amended June 12, 2018, pp. 7-8.) Yet even if one accepts for sake of argument the premise that retroactive application of the statute would not be cost effective (but see the discussion *post*), the People offer no reason to think the Legislature sought to cut costs at the expense of accomplishing the statute's other aims. The report's reference to cost savings tells us little, if anything, about whether the Legislature intended the statute to apply retroactively. Therefore, we do not regard the mention of cost savings in a legislative report as a clear indication of contrary legislative intent.

And in any event, it is not clear that a cost savings motivation would be inconsistent with retroactive application of the mental health diversion statute. According to an analysis of Senate Bill 215, which amended section 1001.36 just a few months after it was enacted, community-based treatment for a mentally ill individual costs much *less* than jailing the same individual, and greatly reduces recidivism. (Sen. Rules Com., Off. Of Sen. Floor Analysis, Unfinished Business Analysis of Sen. Bill 215 (2017-2018 Reg. Sess.) as amended Aug. 23, 2018, p. 2 [community-based treatment for a mentally ill defendant costs roughly $20,000 per year; jailing the same defendant costs more than $75,000].) Thus, for an individual like defendant,

who is currently serving a nine-year prison sentence, participation in a mental health diversion program rather than serving the remainder of his sentence could potentially result in substantial cost savings to the state.

The People also contend that the timing of Senate Bill 215's amendments to section 1001.36 supports their position. "Had the Legislature believed that the original enactment was retroactive for all cases not yet final on appeal," the People argue, "presumably it would have taken urgent action in order to avoid allowing convicted murders and rapists with non-final judgments to avoid conviction in the interim." Instead, the People observe, the amendments to section 1001.36 that were implemented through Senate Bill 215 were approved by the Legislature in September 2018 and became effective only in January 2019.

This is not a persuasive argument. The Legislature's decision not to enact subsequent amendments with urgency does not clearly indicate an intent to rebut the *Estrada* inference of retroactivity, particularly in light of the statute's express purpose to increase diversion. (§ 1001.35, subd. (a).) Moreover, under the statutory scheme as originally enacted through Assembly Bill 1810, the diversion authorized by section 1001.36 hinged on the satisfaction of criteria, including a finding by the court "that the defendant will not pose an unreasonable risk of danger to public safety." (Former § 1001.36, subd. (b)(6).) In adopting Senate Bill 215, the Legislature could have regarded the preexisting criteria as adequate to protect public safety, at least until the new law took effect.

The People further argue that applying *Estrada*'s inference of retroactivity to cases after adjudication would risk

potentially "undermining the legitimacy" of a jury's verdict. The People maintain that defendants suffering from mental illness will frequently pursue a mental health defense, which a jury must necessarily reject by reaching a guilty verdict. Meanwhile, to find a defendant eligible for diversion under the statute, the court must be satisfied that the defendant suffers from a mental disorder (§ 1001.36, subd. (b)(1)(A)), and that the "disorder was a significant factor in the commission of the charged offense" (*id.*, subd. (b)(1)(B)). The People identify an overlap in this scenario between the issues that were before a jury and, later, to be decided by the court considering eligibility for diversion. They reason therefrom that it "would risk potentially undermining the integrity of [a] jury's findings" if a trial court subsequently held a diversion eligibility hearing. But even if we were to assume some such overlap in a subset of the cases to which the diversion statute may apply (the statute does not define the term "significant factor," and we have no occasion here to do so), the more fundamental fact is that it would not provide a clear indication that the statute was not intended to apply retroactively. The Legislature could well have intended to allow judges to decide under the statute whether a defendant's mental disorder was a "significant factor in the commission of the charged offense" (*ibid.*) even after a verdict in which a mental health defense had been presented but rejected by the trier of fact.

Finally, the People assert that section 1001.36 should not be given retroactive effect because it would be awkward to apply the scheme after adjudication. They emphasize that some of the statute's eligibility requirements, such as waiver of a defendant's right to a speedy trial (§ 1001.36, subd. (b)(1)(D)), would no longer be pertinent, and language in the statute

providing that diversion be made "pretrial" would have to be ignored. The potential logistical problems identified by the People in providing defendants with a diversion eligibility hearing after conviction, however, do not provide a sufficient basis to deny defendants the benefit of a hearing altogether. (See *Lara, supra,* 4 Cal.5th at pp. 312-313.) Although applying section 1001.36 retroactively may be somewhat challenging, we remain optimistic that "the courts involved can implement [it] without undue difficulty." (*Lara,* at p. 313.)

### D. Defendant Is Entitled to a Pretrial Diversion Hearing

Having found that section 1001.36 applies retroactively, we must now consider the remedy. In *Lara,* we endorsed a limited remand procedure described by the Court of Appeal in *People v. Vela* (2018) 11 Cal.App.5th 68 (judg. vacated and cause remanded (2018) 411 P.3d 526, reaffd. (2018) 21 Cal.App.5th 1099) to allow the juvenile court to conduct a transfer hearing under Proposition 57. (*Lara, supra,* 4 Cal.5th at pp. 309-310, citing *Vela,* at p. 81 [now 21 Cal.App.5th at p. 1113].) Noting its authority to " 'remand the cause to the trial court for such further proceedings as may be just under the circumstances' " pursuant to section 1260, the *Vela* court conditionally reversed the defendant's conviction and sentence and ordered a limited remand to the juvenile court with instructions to conduct a juvenile transfer hearing, treating the matter as though the prosecutor had originally filed a juvenile petition in juvenile court and had then moved to transfer the defendant's case to a court of criminal jurisdiction. (*Vela,* at p. 81 [now 21 Cal.App.5th at p. 1113], citing § 1260; see *Lara,* at p. 310.)

Here, the Court of Appeal concluded that remand is warranted because defendant's case is not yet final on appeal

and the record affirmatively discloses that he appears to meet at least one of the threshold requirements: a diagnosed mental disorder. (*Frahs, supra,* 27 Cal.App.5th at p. 791.) The court conditionally reversed defendant's convictions and sentence and directed the trial court on remand to make an eligibility determination regarding diversion under section 1001.36. (*Frahs,* at p. 791.) It "instruct[ed] the trial court — as nearly as possible — to retroactively apply the provisions of section 1001.36, as though the statute existed at the time [defendant] was initially charged." (*Ibid.*) It further provided: "If the trial court finds that [defendant] suffers from a mental disorder, does not pose an unreasonable risk of danger to public safety, and otherwise meets the six statutory criteria (as nearly as possible given the postconviction procedural posture of this case), then the court may grant diversion. If [defendant] successfully completes diversion, then the court shall dismiss the charges. However, if the court determines that [defendant] does not meet the criteria under section 1001.36, or if [defendant] does not successfully complete diversion, then his convictions and sentence shall be reinstated." (*Id.* at p. 792.)

The People argue that remand is inappropriate because defendant has not made an adequate showing of eligibility. They assert that a defendant must demonstrate that he or she satisfies all six threshold eligibility requirements before an appellate court may remand the case to the trial court for a diversion eligibility hearing.

We conclude that imposing such a high bar in the posture of proceedings such as these would be unduly onerous and impractical. When, as here, a defendant was tried and convicted before section 1001.36 became effective, the record on appeal is unlikely to include information pertaining to several eligibility

factors, such as whether the defendant consents to diversion (§ 1001.36, subd. (b)(1)(D)), agrees to comply with treatment as a condition of diversion (*id.*, subd. (b)(1)(E)), or has provided the opinion of a qualified mental health expert that the defendant's symptoms would respond to mental health treatment (*id.*, subd. (b)(1)(C)).  Moreover, the People elsewhere acknowledge that "some of the eligibility requirements no longer apply" to defendants whose cases were adjudicated before the diversion statute was enacted.  Accordingly, it makes little sense to require defendants to demonstrate on appeal that they would have waived their rights to a speedy trial.  Furthermore, requiring defendants to show they would meet all threshold eligibility requirements before the appellate court may remand the case to the trial court — which decides in the first instance whether a defendant is eligible for diversion — would be inconsistent with any sensible retroactive application of the statute.  That, in turn, would run counter to our usual inference that the Legislature intends ameliorative statutes like this one to apply as broadly as possible within the constraints of finality — an inference that has not been rebutted here.[5]  (See *Lara, supra*, 4 Cal.5th at p. 308, quoting *Conley, supra*, 63 Cal.4th a p. 657.)

---

[5]     Our conclusion that the *Estrada* rule applies here also leads us to reject the People's suggestion that an individual in defendant's position must first file a petition for a writ of habeas corpus demonstrating his or her eligibility.  The statute has direct retroactive application, with a remand allowing the trial court to ascertain defendant's eligibility for diversion, so habeas corpus procedures are not implicated here.  (Cf. *In re Kirchner* (2017) 2 Cal.5th 1040, 1052.)

The People next claim that a remand would be pointless because the trial court has already made findings that cast defendant as unsuitable for diversion. The People emphasize the trial court's determination in the proceedings below that there were no "significant mitigating factors" that weighed in favor of striking defendant's prior enhancement. (See §§ 25, subd. (c), 1385, subd. (a); Cal. Rules of Court, rules 4.409, 4.423(a)(7), (b)(2), 4.428(b)(1); *People v. Williams* (1998) 17 Cal.4th 148, 161.) Thus, the argument goes, the trial court has already concluded that defendant knew his actions were illegal (Cal. Rules of Court, rule 4.423(a)(7)) and was not "suffering from a mental condition that significantly reduced culpability for" his crimes (*id.*, rule 4.423(b)(2)) — and therefore would find defendant ineligible for diversion on remand. But we agree with defendant that these findings do not conclusively establish that a remand would be futile. Section 1001.36, subdivision (b)(1) provides that pretrial diversion may be granted if, among other requirements, the court is satisfied that "the defendant suffers from a mental disorder" (*id.*, subd. (b)(1)(A)) and "the defendant's mental disorder was a significant factor in the commission of the charged offense" (*id.*, subd. (b)(1)(B)). As defendant argues, the trial court could find that these criteria for diversion are satisfied even if that court believed defendant's mental disorder did not significantly reduce his *culpability* for the crimes.

The People further contend that defendant's ineligibility for probation disqualifies him from mental health diversion because "diversion is similar in many respects to probation." They maintain that by being ineligible for probation, defendant would also be ineligible for diversion because he would pose an unreasonable risk of danger to public safety if treated in the

25

community.  (§ 1001.36, subd. (b)(1)(F).)  Yet again, we are not convinced.  As a preliminary matter, the Legislature left it to trial courts to make fact-specific evaluations of risk under section 1001.36, subdivision (b)(1)(F).  If the Legislature had intended to make all defendants who are ineligible for probation also ineligible for diversion, it could have easily said so, just as the amendments enacted by Senate Bill 215 specified that defendants charged with certain crimes were categorically disqualified.  Moreover, a defendant may be ineligible for probation for numerous reasons other than being found to be an unreasonable risk of danger of public safety.  (E.g., § 1210.1, subd. (b).)  Here, defendant admitted he was ineligible for probation under section 1203, subdivision (k) [probation shall not be granted to any person who is convicted of a violent or serious felony and who was on probation for a felony offense at the time of the commission of the new felony offense].  The trial court made no finding regarding whether defendant would pose an unreasonable risk of danger to public safety if treated in the community, and we decline to interpret its ruling in such a manner.

The People also assert that defendant, having already been sentenced, is disqualified from diversion because the Penal Code prohibits a defendant who is ineligible for probation or who has a prior strike from receiving a suspended sentence.  (§§ 667, subd. (c)(2), 1203, subd. (k).)  The People reason that if diversion is granted, "the trial court would necessarily be required to suspend imposition of sentence while [defendant] pursued diversion," contravening this rule.  But by conditionally reversing defendant's convictions and sentence for an eligibility hearing under section 1001.36, the case would be restored to its procedural posture before the jury verdict for purposes of

evaluating defendant's eligibility for pretrial mental health diversion. (*Burns, supra,* 38 Cal.App.5th at p. 789.) At that point, defendant faced a mere allegation of a prior serious felony conviction, which is not enough to prohibit a suspended sentence or diversion.

Last, the People maintain that defendant is procedurally barred from obtaining relief because his case has already been adjudicated. This argument is unconvincing. As previously explained, the statute's definition of " 'pretrial diversion' " as the postponement of prosecution at any point of the judicial process "until adjudication" (§ 1001.36, subd. (c)) does not prevent the statute from applying retroactively. By definition, a statute applies "retroactively" to cases already past the procedural point at which the new law ordinarily applies — here, cases that have already been adjudicated but are not yet final on appeal. At the time section 1001.36 became effective, defendant's case was adjudicated but the judgment was not yet final. Accordingly, he is entitled to the benefits of the statute's retroactive application.

To summarize and apply the foregoing, we conclude that a conditional limited remand for the trial court to conduct a mental health diversion eligibility hearing is warranted when, as here, the record affirmatively discloses that the defendant appears to meet at least the first threshold eligibility requirement for mental health diversion — the defendant suffers from a qualifying mental disorder (§ 1001.36, subd. (b)(1)(A)). Because this case does not present such an issue, we do not address the question of whether an appellate court may also decline a defendant's remand request when the record clearly indicates the trial court would have found the defendant "pose[s] an unreasonable risk of danger to public safety" (*id.,* subd. (b)(1)(F)) and is therefore ineligible for diversion. Nor are

we here addressing the separate question of whether the 2019 amendments, which rendered defendants charged with certain crimes categorically ineligible for diversion, apply retroactively. (*Id.*, subd. (b)(2), added by Stats. 2018, ch. 1005, § 1.)

There is evidence in the record that appears to support the first of the statute's threshold eligibility requirements, and one other besides. A clinical and forensic psychologist testified that defendant suffers from a qualifying mental disorder (§ 1001.36, subd. (b)(1)(A)), and opined that his behavior at the Santa Ana market was a consequence of this disorder (*id.*, subd. (b)(1)(B)). This evidence suffices to make a conditional limited remand appropriate here.

## III. DISPOSITION

We affirm the judgment of the Court of Appeal, which conditionally reversed defendant's convictions and sentence with the following instructions for the trial court in considering defendant's eligibility for diversion under section 1001.36: "If the trial court finds that [defendant] suffers from a mental disorder, does not pose an unreasonable risk of danger to public safety, and otherwise meets the six statutory criteria (as nearly as possible given the postconviction procedural posture of this case), then the court may grant diversion. If [defendant] successfully completes diversion, then the court shall dismiss the charges. However, if the court determines that [defendant] does not meet the criteria under section 1001.36, or if [defendant] does not successfully complete diversion, then his convictions and sentence shall be reinstated." (*Frahs, supra*, 27 Cal.App.5th at p. 792.) We agree that the trial court should adopt these procedures, and therefore we remand the matter to the Court of Appeal with directions for it to remand the cause to

the trial court for further proceedings in accordance with these instructions. We express no view concerning whether defendant will be able to show eligibility on remand or whether the trial court should exercise its discretion to grant diversion if it finds him eligible.

We also disapprove the opinions in *People v. Lipsett*, *supra*, 45 Cal.App.5th 569, review granted May 13, 2020, S261323; *People v. Khan, supra*, 41 Cal.App.5th 460, review granted Jan. 29, 2020, S259498; and *People v. Craine, supra*, 35 Cal.App.5th 744, review granted Sept. 11, 2019, S256671, to the extent they are inconsistent with this opinion.

**CANTIL-SAKAUYE, C. J.**

**We Concur:**

**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**GROBAN, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Frahs

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XX 27 Cal.App.5th 784
**Rehearing Granted**

_____

**Opinion No.** S252220
**Date Filed:** June 18, 2020

_____

**Court:** Superior
**County:** Orange
**Judge:** Glenn R. Salter

_____

**Counsel:**

Arthur Martin and Susan L. Ferguson, under appointments by the Supreme Court, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Matthew Mulford, Marilyn George, Meredith White, Daniel Hilton and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Steve Oetting
Deputy Attorney General
600 West Broadway, Suite 1800
San Diego, CA 92186-5266
(619) 738-9207

Arthur Martin
Appellate Defenders, Inc.
555 West Beech Street, Suite 300
San Diego, CA 92101
(619) 696-0282