Filed 4/21/21  P. v. Garris CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H045657 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1502269) |
| v. | |
| DAVID ALLEN GARRIS, | |
| Defendant and Appellant. | |

## I.    INTRODUCTION

A jury found defendant David Allen Garris guilty of carjacking (Pen. Code, § 215),[1] attempted second degree robbery (§§ 664, 211, 212.5, subd. (c)), and assault with a deadly weapon (§ 245, subd. (a)(1)) and found true the allegation that defendant personally used a dangerous or deadly weapon during the commission of the assault (§§ 667, 1192.7).  Defendant admitted the allegations that he had two prior strike convictions (§§ 667.5, subds. (b)-(i), 1170.12), two prior serious felony convictions (§ 667, subd. (a)), and two prior prison terms (§ 667.5, subd. (b)).  After the trial court denied defendant's *Romero*[2] motion to strike the prior strike convictions, it sentenced defendant to an aggregate term of 37 years to life.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).

Defendant contends that the case must be conditionally remanded for a mental health diversion eligibility hearing pursuant to section 1001.36; remand is required to give the trial court an opportunity to exercise its newfound discretion to strike his serious felony priors; and the trial court abused its discretion when it denied his *Romero* motion and violated the constitutional prohibition against cruel and unusual punishment by imposing a 37 years to life sentence. The Attorney General concedes that the case should be remanded for the court to conduct a mental health diversion eligibility hearing and for the court to exercise its discretion to strike defendant's serious felony priors. The Attorney General asserts that we need not resolve defendant's *Romero* and constitutional claims because defendant can renew his *Romero* motion on remand.

For reasons that we will explain, we will conditionally reverse the judgment and remand the matter for the trial court to conduct a mental health diversion eligibility hearing. If the court grants defendant mental health diversion and defendant successfully completes it, the court shall dismiss the charges and allegations against defendant. If the court declines to grant defendant mental health diversion or if defendant fails to successfully complete it, the court shall reinstate defendant's convictions and resentence defendant, exercising its discretion whether to strike defendant's serious felony prior convictions for sentencing purposes. Defendant shall have the opportunity to raise his *Romero* and constitutional claims on remand.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     *Prosecution Case*

On January 17, 2015 at approximately 5:00 p.m., J.V. was visiting a friend outside of the friend's motorhome in a homeless encampment in San Jose. At some point, J.V. heard screaming coming from inside a trailer approximately 20 to 25 feet away. Five or 10 minutes later, defendant came out of the trailer. Defendant walked directly toward J.V., who was seated. Defendant screamed at J.V., asking him where he was from and demanding that he give defendant money. J.V. had never seen defendant before.

2

Defendant picked up a shovel, walked up to J.V., leaned over, and put his forehead against J.V.'s forehead. Defendant raised the shovel in a threatening manner, as if he was going to hit J.V. with it. The force from defendant's forehead caused J.V. to fall off his chair. Defendant dropped the shovel and tried to take J.V.'s wallet by pulling it from J.V.'s pants while J.V. was on the ground. J.V. took his wallet out and gave defendant $50 because he was afraid. When J.V. handed defendant the money, defendant reached into J.V.'s pocket, grabbed J.V.'s keys, and left in J.V.'s pickup truck.

J.V. frantically flagged down a police officer and pointed to his truck as defendant drove away down Monterey Road. Traveling at approximately 100 miles per hour in moderate traffic, defendant sped past another officer, attempted to make a righthand turn at a high rate of speed, and crashed into an embankment, where he was apprehended.

## B.   *Defense Case*

Defendant testified that he had been on medication since he was 10 years old when he was diagnosed with hyperactive attention deficit disorder. Defendant also started using alcohol, marijuana, and methamphetamine when he was "really young." Defendant began receiving mental health treatment at the California Youth Authority (CYA) around the year 2000. After he turned 18, defendant was put on an antipsychotic medication for hallucinations, but he had difficulty getting the medication once he was released from CYA. Defendant stated that he has been diagnosed with paranoid schizophrenia, bipolar disorder, hyperactive disorder, adjustment disorder, and posttraumatic stress disorder. Defendant was receiving medication in county jail.

Defendant testified that on January 17, 2015, he was living with his mother on Monterey Road. A man named "Carlos" had a trailer across from his mother. Defendant had used methamphetamine the night before when he was "partying with [J.V.] and Carlos." Defendant had become acquainted with J.V., whom he knew as " 'Chewy,' " on a couple of occasions when defendant helped J.V. get drugs.

3

Defendant testified that on the night before the incident, defendant asked to borrow J.V.'s truck to look for his girlfriend. Defendant offered to pay J.V. with an eight-ball of methamphetamine, which was worth approximately $80. Defendant gave J.V. $30 worth of methamphetamine and said he would give him the remainder when he returned.

Defendant stated that he spent all night looking for his girlfriend. When he returned to the encampment around 3:00 a.m., J.V. was no longer there and neither was Carlos. Defendant went to his mother's trailer to go to sleep.

When defendant's mother woke defendant up, defendant began arguing with her about his girlfriend because defendant felt that his mother was hiding something from him. Defendant heard a couple of people laughing outside. Defendant looked out the window and saw that it was J.V. and another man he had never seen before. Defendant felt like "something's not adding up . . . like everything's a lie." Defendant thought that his girlfriend might be in Carlos's trailer and may have been there "the whole time."

Defendant stated that he went outside, approached the man he did not know, and asked, " 'Who the F are you?' " The man responded, " 'Mind your own business, or I'll mess you up.' " The man had his hand in his coat, causing defendant to think he may have a gun. Defendant tried to open the door to Carlos's trailer, told the man he did not want " 'no problem with [him],' " and said he " 'just want[ed] the keys [to the trailer].' " Defendant knocked on the door to Carlos's trailer saying, " 'Open the door.' " Defendant was angry.

J.V. asked defendant about the $50 defendant owed him for using his truck. When defendant turned to look at J.V., he saw that J.V. had a knife in his hand. Defendant "freaked out" because he did not want to get stabbed. Defendant began backing up and said, " '[D]on't hurt me.' " Defendant took J.V.'s car keys out of his own pocket and told J.V. to either take his keys back or let him use the truck so that defendant could get him the money. Defendant then threw J.V.'s keys towards him. Defendant tripped over a

4

cement block and fell next to a shovel. Defendant got up and swung the shovel at J.V. once or twice. Defendant was scared for his life. J.V. fell over. Defendant picked up J.V.'s keys, got in the truck, and took off.

As defendant drove away, he saw an officer on the side of the road. Defendant honked and pulled alongside the officer because he was trying to get help. Defendant saw that J.V. was already talking to the officer on the other side of the patrol car. Defendant sped away. Defendant drove for a couple of minutes before crashing.

Defendant admitted that he was convicted of assault with a deadly weapon in June 2000, and he was convicted of attempted robbery in October 2007. Defendant also stated that he had been convicted of felony resisting arrest.[3]

Neuropsychologist Brent Hughey testified that when he evaluated defendant in 2012, he diagnosed him with bipolar disorder with psychotic features and multiple substance use disorder. When Dr. Hughey evaluated defendant in 2016, he again concluded that defendant had bipolar disorder but also "raise[d] the prospect of a schizoaffective disorder."

Forensic and clinical neuropsychologist Ashley Cohen diagnosed defendant with post-traumatic stress disorder with disassociation, mixed polysubstance use disorder, and mild neurocognitive impairment.[4] Dr. Cohen also opined that it was possible that defendant had schizophrenia but she "lean[ed] more not . . . than yes."

### C.     *Charges, Verdicts, and Sentencing*

Defendant was charged by second amended information with carjacking (§ 215; count 1), attempted second degree robbery (§§ 664, 211, 212.5, subd. (c); count 2), and assault with a deadly weapon (§ 245, subd. (a)(1); count 3). It was also alleged that defendant personally used a deadly or dangerous weapon during the commission of

---

[3] Defendant's brother also testified. We do not summarize his testimony here because it is not relevant to the issues on appeal.

[4] Dr. Cohen did not state when she evaluated defendant.

count 3 (§§ 667, 1192.7) and had sustained two prior strike convictions (§§ 667, subds. (b)-(i), 1170.12), two prior serious felony convictions (§ 667, subd. (a)), and two prior prison terms (§ 667.5, subd. (b)).

The jury found defendant guilty of all counts and found the deadly or dangerous weapon allegation true. Defendant admitted the prior conviction and prior prison term allegations.

The trial court denied defendant's *Romero* motion to strike his prior strike convictions. The court sentenced defendant to 27 years to life on count 1 and imposed and stayed 25 years to life sentences on counts 2 and 3. The court imposed a consecutive 10-year sentence for defendant's prior serious felony convictions and struck the punishment for the prior prison term sentence enhancements.

## III. DISCUSSION

### A. *Mental Health Diversion*

Defendant contends that the matter should be remanded for the trial court to determine his eligibility for mental health diversion under section 1001.36, which was enacted after he was sentenced. Effective June 27, 2018, section 1001.36 authorizes the trial court to grant pretrial diversion to defendants who are diagnosed with a qualifying mental disorder and meet other requirements. (*Id.*, subds. (a) & (b); see Stats. 2018, ch. 34, § 24.) Defendant, who was sentenced on March 2, 2018, argues that section 1001.36 applies retroactively to cases, such as his, that are not yet final on appeal. He also contends that the record establishes that he "suffers from serious mental health disorders." The Attorney General concedes that the case should be remanded for the court to conduct a mental health diversion eligibility hearing.

A trial court may grant pretrial diversion pursuant to section 1001.36 if the defendant has not been charged with a disqualifying offense and the court finds: "(1) the defendant suffers from a qualifying mental disorder; (2) the disorder played a significant role in the commission of the charged offense; (3) the defendant's symptoms will respond

6

to mental health treatment; (4) the defendant consents to diversion and waives his or her speedy trial right; (5) the defendant agrees to comply with treatment; and (6) the defendant will not pose an unreasonable risk of danger to public safety if treated in the community.  [Citation.]" (*People v. Frahs* (2020) 9 Cal.5th 618, 626-627 (*Frahs*).)  "If the defendant makes a prima facie showing that he or she meets all of the threshold eligibility requirements and the defendant and the offense are suitable for diversion, and the trial court is satisfied that the recommended program of mental health treatment will meet the specialized mental health treatment needs of the defendant, then the court may grant pretrial diversion.  (§ 1001.36, subds. (a), (b)(3) & (c)(1).)  The maximum period of diversion is two years.  (*Id.*, subd. (c)(3).)  If the defendant is subsequently charged with an additional crime, or otherwise performs unsatisfactorily in the assigned program, then the court may reinstate criminal proceedings.  (*Id.*, subd. (d).)  'If the defendant has performed satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion' and 'the arrest upon which the diversion was based shall be deemed never to have occurred.'  (*Id.*, subd. (e).)" (*Id.* at p. 627.)

In *Frahs*, the California Supreme Court held that section 1001.36 applies retroactively to cases where, as here, the judgment is not yet final.  (*Frahs*, *supra*, 9 Cal.5th at p. 624.)  The court further determined "that a conditional limited remand for the trial court to conduct a mental health diversion eligibility hearing is warranted when . . . the record affirmatively discloses that the defendant appears to meet at least the first threshold eligibility requirement for mental health diversion—the defendant suffers from a qualifying mental disorder." (*Id.* at p. 640.)

Here, the record affirmatively discloses that defendant appears to suffer from bipolar disorder and/or post-traumatic stress disorder, and thus he "appears to meet at least the first threshold eligibility requirement for mental health diversion." (*Frahs*, *supra*, 9 Cal.5th at p. 640; see § 1001.36, subd. (b)(1)(A) [bipolar disorder and post-

7

traumatic stress disorder are qualifying mental disorders].)  Further, in *Frahs*, the California Supreme Court rejected the argument that probation ineligibility, having a prior strike, or a trial court's refusal to strike an enhancement for a prior serious felony conviction categorically disqualifies a defendant from mental health diversion. (*Frahs*, *supra*, at pp. 638-640.)

Therefore, pursuant to the California Supreme Court's decision in *Frahs* and based on the record before us, we conclude that a conditional remand is appropriate for the trial court to conduct a mental health diversion eligibility hearing.  (See *Frahs*, *supra*, 9 Cal.5th at p. 640.)  We express no opinion on whether defendant will be able to demonstrate eligibility for mental health diversion under section 1001.36 on remand or whether the trial court should exercise its discretion to grant diversion if it finds defendant eligible.

**B.    *Amendment to Section 667, Subdivision (a)***

Pursuant to section 667, subdivision (a), the trial court imposed a consecutive 10-year sentence for defendant's prior serious felony convictions.  Defendant contends that the matter must be remanded to give the trial court an opportunity to exercise its newly enacted discretion to strike the prior serious felony convictions.  The Attorney General agrees.

After defendant was sentenced, the Governor signed Senate Bill No. 1393, which amended section 667, subdivision (a), and section 1385, subdivision (b), to allow a trial court to exercise its discretion to strike a prior serious felony conviction for sentencing purposes.  (Stats. 2018, ch. 1013, §§ 1-2.)  Under the previous version of section 667, the court was required to impose a five-year consecutive term for "[a]ny person convicted of a serious felony who previously has been convicted of a serious felony . . . ."  (Former § 667, subd. (a).)  The court had no discretion to "strike any prior conviction of a serious felony for purposes of enhancement of a sentence under Section 667."  (Former § 1385,

8

subd. (b).)  Senate Bill No. 1393 applies retroactively to nonfinal judgments.  (*People v. Stamps* (2020) 9 Cal.5th 685, 699.)

" 'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court. [Citations.]' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)  When the record shows that the trial court proceeded with sentencing on the assumption that it lacked discretion, remand for resentencing is necessary "unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.'  [Citations.]"  (*Ibid.*)

Here, the trial court did not express an intent to impose the maximum sentence permitted and exercised its discretion to strike the punishment for the section 667.5, subdivision (b) prior prison term enhancements pursuant to section 1385.  Although the court denied defendant's *Romero* motion to strike his prior strike convictions, the court's ruling on the *Romero* motion reflects solely its finding that defendant did not fall outside of the Three Strikes sentencing scheme.  (See *People v. Carmony* (2004) 33 Cal.4th 367, 376.)  Thus, the record before us does not clearly indicate that the trial court would have declined to strike defendant's prior serious felony convictions if it had the discretion to do so for the purposes of sentencing him under section 667, subdivision (a).  (Cf. *People v. Gutierrez* (1996) 48 Cal.App.4th 1894, 1896 [declining to remand for resentencing because "the trial court indicated that it would not, in any event, have exercised its discretion to lessen the sentence"].)

Accordingly, we conclude that remand is appropriate to allow the trial court to exercise its discretion regarding whether to strike defendant's prior serious felony convictions for sentencing purposes.  We express no opinion on how the court should exercise its discretion.

9

## C.   *Denial of Romero Motion*

Defendant contends that the trial court abused its discretion when it denied his *Romero* motion to strike at least one of his prior strike convictions and that his 37 years to life sentence constitutes cruel and unusual punishment in violation of the state and federal constitutions.  The Attorney General asserts that we need not resolve defendant's claims because defendant can renew his *Romero* motion on remand.

As stated, we are remanding the matter to the trial court for a mental health diversion eligibility hearing and to give the court an opportunity to exercise its discretion to strike defendant's prior serious felony convictions.  If the court declines to grant defendant mental health diversion or if defendant does not successfully complete diversion, the trial court shall resentence defendant, exercising its discretion regarding whether to strike defendant's prior serious felony convictions for sentencing purposes.  Because we must remand the matter for resentencing, defendant may raise his *Romero* and constitutional claims before the trial court on remand.

## IV.   DISPOSITION

The judgment is conditionally reversed with the following instructions:  If the trial court finds that defendant suffers from a qualifying mental disorder, does not pose an unreasonable risk of danger to public safety, and otherwise meets the relevant statutory criteria in Penal Code section 1001.36, the court may grant defendant diversion.  If defendant successfully completes diversion, the court shall dismiss the charges and allegations against defendant.  However, if the court declines to grant defendant diversion under Penal Code section 1001.36, or if defendant does not successfully complete diversion, the court shall reinstate defendant's convictions and resentence defendant.  At the resentencing hearing, the trial court shall determine whether to exercise its discretion pursuant to Penal Code section 1385 to strike defendant's prior serious felony convictions for the purposes of sentencing him under Penal Code section 667, subdivision (a).  Defendant may renew his *Romero* motion at the resentencing hearing.

10

_____
BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____
ELIA, ACTING P.J.

_____
GROVER, J.

*People v. Garris*
**H045657**