Filed 5/5/21  P. v. Hinchliff CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. GABRIEL HINCHLIFF, Defendant and Appellant. | D077108 (Super. Ct. No. SCE82399) |

APPEAL from a judgment of the Superior Court of San Diego County, Carlos O. Armour, Judge.  Affirmed.

Matthew R. Garcia, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Ksenia Gracheva, Deputy Attorneys General, for Plaintiff and Respondent.

# I

# INTRODUCTION

Defendant Gabriel Hinchliff appeals a judgment of conviction entered after a jury found him guilty of one count of making a criminal threat (Pen. Code, § 422; count 1)[1] and one count of resisting an executive officer (§ 69; count 2).  He contends he was denied effective assistance of counsel because his trial counsel did not request pretrial mental health diversion for him.  We reject the defendant's contention and affirm the judgment.

# II

# BACKGROUND

## A

On June 26, 2018, two sheriff's deputies responded to a report of a man sleeping at the base of a stairwell.  The deputies found the defendant passed out and curled in a ball with his pants down.  They roused the defendant awake and observed that he exhibited signs of intoxication such as slurred speech, aggression, red and watery eyes, and an odor of alcohol emanating from his person.

The deputies began to arrest the defendant for public intoxication and a scuffle ensued.  As the deputies tried to restrain the defendant, he struggled to free himself and threatened to beat up, head butt, and stab the deputies.  The defendant repeatedly stated he would rape the daughter of one of the deputies and slit her throat.  He also attempted to expose himself to the deputies.

Members of the fire department arrived at the scene and the defendant attempted to spit on one of them.  To prevent the possible spread of disease, the deputies placed a net-like spit sock over the defendant's head.  Due to the

---

1    Further undesignated references are to the Penal Code.

2

defendant's combative conduct, they also used a wrap to strap the defendant's arms to his body and pull his legs up to his waistline.  While the defendant was put into a deputy's vehicle and transported to the sheriff's department substation, he kicked his feet and continued threatening to rape the arresting deputy's daughter.

B

The defendant was charged with one count of making a criminal threat and one count of resisting an executive officer.  At trial, the defense called one witness, a clinical and forensic psychologist named Dr. Kristina Malek.  The defense called Dr. Malek to establish that the defendant did not form the requisite intent to commit the charged offenses due, in part, to his consumption of alcohol.  Additionally, Dr. Malek testified that she conducted a psychological evaluation of the defendant.

Dr. Malek testified she formed opinions regarding the following topics based on her psychological evaluation of the defendant:  (1) whether the defendant suffers from a mental disease, defect, or illness; and (2) whether he had those disorders on the date of the incident.  She testified she diagnosed the defendant with dysthymia (a persistent depressive disorder), unspecified anxiety disorder, unspecified personality disorder, and attention deficit hyperactivity disorder.  She testified she also diagnosed him with substance abuse disorders for alcohol, cannabis, and hallucinogens.

When questioned whether the defendant suffered from mental health disorders at the time of his arrest, Dr. Malek testified that "the alcohol use disorder was in effect on that date" as evidenced by the defendant's state of intoxication.  However, Dr. Malek testified that depression "comes and goes" and it was "difficult to tell" whether he presented with depression at the time

3

of the incident. She added, "the one thing you can tell from the [arrest] video is he was definitely intoxicated."

On June 20, 2019, the jury found the defendant guilty of the charged offenses. The court sentenced him to prison for a total term of six years and eight months, consisting of a term of five years and four months for convictions in another criminal case (No. SCN400626), plus consecutive eight-month terms for each of the two convictions in the present case.

Defense counsel did not request mental health diversion for the defendant at any point in the proceedings below.

III

DISCUSSION

A

*Mental Health Diversion Statute*

On June 27, 2018, the day after the defendant's arrest, the Governor signed into law Assembly Bill No. 1810 (2017–2018 Reg. Sess.), an omnibus budget bill that, among other things, enacted sections 1001.35 and 1001.36, effective immediately. (Stats. 2018, ch. 34, § 24.)

"Section 1001.36 authorizes a pretrial diversion program for defendants with qualifying mental disorders. The statute defines ' "pretrial diversion" ' as 'the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment ....' (§ 1001.36, subd. (c).) The stated purpose of the diversion statute 'is to promote all of the following: [¶] (a) Increased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety. [¶] (b) Allowing local discretion and flexibility for counties in the development

4

and implementation of diversion for individuals with mental disorders across a continuum of care settings. [¶] (c) Providing diversion that meets the unique mental health treatment and support needs of individuals with mental disorders.' (§ 1001.35, subds. (a)–(c).)" (*People v. Frahs* (2020) 9 Cal.5th 618, 626 (*Frahs*).)

Subject to exceptions not present here, a trial court may grant pretrial diversion if it finds all of the following: (1) the defendant suffers from a qualifying mental disorder; (2) the mental disorder was a significant factor in the commission of the charged offense; (3) the defendant's symptoms will respond to mental health treatment; (4) the defendant consents to pretrial diversion and waives his or her speedy trial right; (5) the defendant agrees to comply with treatment; and (6) the defendant will not pose an unreasonable risk of danger to public safety if treated in the community. (§ 1001.36, subd. (b)(1)(A)–(F); see *Frahs, supra*, 9 Cal.5th at pp. 626–627.)

"If the defendant makes a prima facie showing that he or she meets all of the threshold eligibility requirements and [no exceptions apply], and the trial court is satisfied that the recommended program of mental health treatment will meet the specialized mental health treatment needs of the defendant, then the court may grant pretrial diversion. (§ 1001.36, subds. (a), (b)(3) & (c)(1).) The maximum period of diversion is two years. (*Id.*, subd. (c)(3).) If the defendant is subsequently charged with an additional crime, or otherwise performs unsatisfactorily in the assigned program, then the court may reinstate criminal proceedings. (*Id.*, subd. (d).) 'If the defendant has performed satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion' and 'the arrest upon which the diversion was based shall be

deemed never to have occurred.'  (*Id*., subd. (e).)"  (*Frahs, supra*, 9 Cal.5th at p. 627.)

B

*The Defendant Has Not Established Ineffective Assistance of Counsel*

The defendant appeals the judgment on grounds that he received ineffective assistance of counsel in violation of his state and federal constitutional rights.  He asserts his trial counsel was ineffective because she did not request that the trial court grant him pretrial diversion.  Citing *Frahs, supra*, 9 Cal.5th 618, the defendant asks us to conditionally reverse the judgment and remand the matter for the trial court to make a diversion eligibility determination.

The defendant's reliance on *Frahs* and his related request for a conditional reversal and remand are misplaced.  In *Frahs*, the Supreme Court determined the pretrial diversion statute is an ameliorative law that applies retroactively to all nonfinal cases, including cases pending on appeal.  (*Frahs*, *supra*, 9 Cal.5th at pp. 624–625.)  Given the pretrial diversion statute's retroactive operation, the Supreme Court concluded that an appellate court should conditionally reverse a defendant's nonfinal judgment and order a limited remand for a diversion eligibility determination whenever "the defendant appears to meet at least the first threshold eligibility requirement for mental health diversion—the defendant suffers from a qualifying mental disorder (§ 1001.36, subd. (b)(1)(A))."  (*Id*. at p. 640.)

Here, unlike in *Frahs*, there was no appeal of a judgment pending at the time the pretrial diversion statute went into effect.  Instead, the defendant was tried a year *after* the statute went into effect.  Because the defendant could have sought diversion in the trial court, but failed to do so, his appellate request for a conditional reversal and a diversion eligibility

determination is forfeited. (See *People v. Trujillo* (2015) 60 Cal.4th 850, 856 [" ' " ' "[A] constitutional right," or a right of any other sort, "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." ' " ' "].)

The defendant's claim of ineffective assistance of counsel fares no better. To establish ineffective assistance of counsel, a defendant must "demonstrate (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient representation prejudiced the defendant, i.e., there is a 'reasonable probability' that, but for counsel's failings, defendant would have obtained a more favorable result." (*People v. Dennis* (1998) 17 Cal.4th 468, 540–541; see *Strickland v. Washington* (1984) 466 U.S. 668, 687.)

" 'Unless a defendant establishes the contrary, we shall presume that "counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." [Citation.] If the record "sheds no light on why counsel acted or failed to act in the manner challenged," an appellate claim of ineffective assistance of counsel must be rejected "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation." ' " (*People v. Bell* (2019) 7 Cal.5th 70, 125; see *People v. Nguyen* (2015) 61 Cal.4th 1015, 1050 [" 'In the usual case, where counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions.' "].)

The record does not disclose why the defendant's counsel did not request pretrial diversion for him. It is possible, as the defendant claims,

7

that his trial counsel was unaware of the pretrial diversion statute or never contemplated its possible application to this case—scenarios that, if true, potentially might indicate that her performance was deficient.

However, those are not the only conceivable explanations for why the defendant's trial counsel did not request pretrial diversion for him. For instance, we do not know whether the defendant's trial counsel discussed the possibility of pretrial diversion with him. It is plausible she did so and he did not consent to pretrial diversion or waive his speedy trial right. If that was in fact what occurred, it would have been reasonable for the defendant's trial counsel to refrain from making a fruitless request for pretrial diversion.

Alternatively, it is conceivable the defendant's trial counsel reasonably believed a pretrial diversion request would be futile for other reasons. The defendant was receiving substance abuse treatment when Dr. Malek wrote her psychological evaluation of him. However, the defendant was arrested shortly *after* the psychological evaluation for allegedly threatening violence against another person, running from the police, resisting arrest, punching and threatening to kill a police officer, and trying to seize the officer's gun. While the defendant was being arrested, he reportedly stated his " 'absolute dream [was] to kill a cop' " and he " 'pray[ed] about killing a cop ….' "

Based on this incident—which occurred *after* the defendant started receiving substance abuse treatment—trial counsel reasonably could have concluded that a request for pretrial diversion would be futile. For instance, she could rationally believe the defendant would be unable to establish that the symptoms of his disorders would respond to mental health treatment (§ 1001.36, subd. (b)(1)(C)), or that he did not pose an unreasonable risk of danger to public safety (*id.*, subd. (b)(1)(F)). "Counsel does not render

8

ineffective assistance by failing to make motions … that counsel reasonably determines would be futile." (*People v. Price* (1991) 1 Cal.4th 324, 387.)

In short, we have "no basis on which to determine whether counsel had a legitimate reason for making a particular decision, or whether counsel's actions or failure to take certain actions were objectively unreasonable." (*People v. Mickel* (2016) 2 Cal.5th 181, 198.) Because the burden rests on the defendant to show that his counsel rendered deficient performance, the silent appellate record proves fatal to his claim of ineffective assistance of counsel.

We note in closing that the defendant is not foreclosed from pursuing his ineffective assistance of counsel argument elsewhere. To the extent he wishes to pursue such a claim, the more appropriate forum to do so is in a habeas corpus proceeding in which extra-record evidence may be considered. (See *People v. Avena* (1996) 13 Cal.4th 394, 419 [" 'Where the record does not illuminate the basis for the challenged acts or omissions, a claim of ineffective assistance is more appropriately made in a petition for habeas corpus."], italics omitted; *People v. Anh The Duong* (2020) 10 Cal.5th 36, 56 ["Any claim of ineffective assistance based on evidence not in the trial record must be made in a habeas corpus petition."].)

IV

DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

AARON, J.

DATO, J.