Filed 10/29/21 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JUAN MIGUEL NEGRON,<br><br>    Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF KERN COUNTY,<br><br>    Respondent;<br><br>THE PEOPLE,<br><br>    Real Party in Interest. | F083149<br><br>(Kern Super. Ct. No. BF180104A)<br><br><br>**ORDER MODIFYING OPINION**<br>**[NO CHANGE IN JUDGMENT]** |

It is ordered that the opinion filed herein on October 26, 2021, be modified as follows:

On page 1, the second paragraph beginning "Pam Singh" is deleted and the following paragraph inserted in its place:

> "Pam Singh, Kern County Public Defender, and Juan Morales, Deputy Public Defender, for Petitioner."

There is no change in the judgment.

MEEHAN, J.

WE CONCUR:

SMITH, Acting P. J.

SNAUFFER, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JUAN MIGUEL NEGRON, | F083149 |
| Petitioner, | |
| v. | (Super. Ct. No. BF180104A) |
| THE SUPERIOR COURT OF KERN COUNTY, | **OPINION** |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of mandate. Michael G. Bush, Judge.

Pam Singh, State Public Defender, and Juan Morales, Deputy State Public Defender, for Petitioner.

No appearance for Respondent

Rob Bonta, Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Eric L. Christoffersen, Deputy Attorneys General, for Real Party in Interest.

-ooOoo-

## INTRODUCTION

Petitioner seeks a writ of mandate to vacate an order denying mental health diversion under Penal Code section 1001.36 in his two pending criminal cases.[1] Petitioner was deemed statutorily ineligible for mental health diversion under section 1001.36 because, while the court concluded he suffers from several qualifying[2] mental health disorders, he also currently suffers from antisocial personality disorder (ASPD), a mental disorder expressly excluded by section 1001.36, subdivision (b)(1)(A) (section 1001.36(b)(1)(A) or § 1001.36(b)(1)(A)).

The central question presented is whether a defendant suffering from an excluded mental health disorder under section 1001.36(b)(1)(A) is statutorily ineligible for mental health diversion based on a different, qualifying mental disorder. We conclude section 1001.36(b)(1)(A) does not wholly preclude from diversion defendants who suffer from both excluded and included mental health disorders; section 1001.36(b)(1)(A) requires only that a defendant suffers from one qualified mental health disorder. The trial court's denial of diversion was incorrect under our interpretation of the section 1001.36(b)(1)(A), the trial court's order is vacated, and the matter is remanded for a new eligibility hearing on petitioner's request for diversion under section 1001.36.

## BACKGROUND

Petitioner has two pending criminal cases. Petitioner filed a motion for mental health diversion in both cases, a hearing was held on June 22, 2021, and the trial court denied the motions on the ground petitioner was statutorily ineligible for diversion because his ASPD diagnosis is an excluded disorder under section 1001.36(b)(1)(A).

---

[1] All further statutory references are to the Penal Code, unless indicated otherwise.

[2] We use the term "qualifying" and "included" interchangeably to describe disorders that are identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) and are not expressly excluded by section 1001.36(b)(1)(A).

(See § 1001.36(b)(1)(A).)  Petitioner filed a petition for writ of mandate in both cases to challenge the trial court's denial of diversion.

## I.      Kern Superior Court Case No. BF180104A

On February 18, 2020, police officers witnessed a driver, later identified as petitioner, crashing into another car.  A traffic stop was attempted, but petitioner refused to stop and led police on a chase that lasted several miles.  Police ultimately subdued and arrested him.  The driver whose car petitioner crashed into said she had been rammed by petitioner's blue pickup truck three times, tried to move out of the way of the truck, but petitioner blocked her from doing so, and then petitioner's blue truck hit her car's passenger side.[3]

Following a preliminary examination, an information was filed on March 6, 2020, which alleged two felony counts:  (1) assault with a deadly weapon (a car) under section 245, subdivision (a)(1) and (2) felony evasion of a peace officer in violation of Vehicle Code section 2800.2.  As to each count, two prior felony convictions were alleged under the Three Strikes law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) and alleged to be serious prior felonies under section 667, subdivision (a).

## II.     Kern Superior Court Case No. BF182498A

While the first case was pending, a driver later identified as petitioner was seen by police running a red light in a maroon pickup truck on September 17, 2020.  When the officer attempted a traffic stop, petitioner waived his hand out the window and yelled, "'no brakes.'"  A chase ensued, petitioner fled the vehicle and hid, but officers found him and arrested him after he initially resisted.

After a preliminary hearing was held, an information was filed on October 29, 2020, alleging (1) felony evading a police officer under Vehicle Code section 2800.2;

---

[3]      The background facts in both matters are taken from the preliminary examination hearing transcripts.  These facts have not been proven or admitted.

(2) resisting or obstructing a police officer in violation of section 148, subdivision (a)(1); and (3) driving without a license in violation of Vehicle Code section 12500, subdivision (a), a misdemeanor. An enhancement was alleged as to count 1 for committing an offense while on bail under section 12022.1, and prior felony strikes were alleged under the Three Strikes law.

### III. Mental Health Diversion Requested and Denied in Both Cases

#### A. Medical Evaluation

On March 25, 2021, petitioner underwent a psychological evaluation with Dr. Musacco. Dr. Musacco was provided Bakersfield Police Department records, petitioner's prior evaluations for competency to stand trial, mental health records from California Correctional Health Care Services, and petitioner's criminal rap sheet.

Following the evaluation, Dr. Musacco diagnosed petitioner with (1) stimulant use disorder, in remission in a controlled environment; (2) unspecified schizophrenia spectrum disorder; (3) borderline intellectual functioning; and (4) ASPD. The ASPD diagnosis was based upon petitioner's criminal behaviors that Dr. Musacco characterized as occurring throughout petitioner's adolescence and adulthood. Dr. Musacco opined petitioner's psychosis, drug use disorder, and borderline intellectual functioning contributed to his criminal behaviors, but that petitioner's ASPD was an "important condition contributing to his actions." He further opined that "[s]ome of the [petitioner's] mental conditions would be responsive to treatment. For example, if the [petitioner] successfully participated in a drug treatment program, I believe his functioning would substantially improve. The [petitioner's] symptoms of psychosis would also be amenable to antipsychotic medications. The [petitioner's] Borderline Intellectual Functioning would not be amenable to psychiatric treatment per se."

#### B. Hearing on Petitioner's Motions for Mental Health Diversion

Supported by Dr. Musacco's evaluation, petitioner filed a motion seeking mental health diversion under section 1001.36 in both of his pending criminal cases, and a

hearing on the motions was held on June 22, 2021. The defense called Dr. Musacco as an expert witness, and he gave testimony consistent with his written evaluation. As far as how petitioner's diagnosed conditions contributed to his criminal conduct, Dr. Musacco explained there was "kind of an accumulative effect amongst these diagnoses," and that petitioner's three qualifying disorders operated together to significantly contribute to his criminal conduct.

Dr. Musacco also explained, however, that it "would be impossible to subtract out the influence of an [ASPD] here, and that's why I referenced it early on as an important condition, which I believe has pervasive impact on his functioning. Also saying that it is also a condition that does not qualify for Diversion. So[,] I don't think that there is—you know, each [of] these conditions have—they are interrelated, and I don't [think] there is a way to entirely pull one string apart from the other and get a—be able to say, you know, for example, his drug use disorder didn't play a role in this—in his behavior. I don't think I could do that, and I don't think I could do that on an [ASPD] as well. They are all tangled up."

The court questioned Dr. Musacco during the hearing as well:

> "THE COURT: Okay. I want to make sure I understand this. The 4 diagnos[e]s you offer, you can't separate any one of those out?
>
> "[DR. MUSACCO]: Well, I can separate A[S]PD … for this purpose because it's excluded. We've got to say I can't consider that.
>
> "THE COURT: But if—here is what I'm getting at .… If they exclude someone with [ASPD] if that's all he had, he would be excluded?
>
> "[DR. MUSACCO]: Absolutely.
>
> "THE COURT: But he has these 3 other diagnos[e]s. How does the fact he has one of them, the [ASPD], does that mean he's not eligible because he has it and the doctor can't exclude that as a factor in his behavior, or can the Court rule well, he's got these other diagnos[e]s. Can I ignore the A[S]PD .…? Can I exclude that? I don't think—Doctor, what I hear you say is these are all intermixed?

5.

"[DR. MUSACCO]: I believe so, yes.

"THE COURT: So[,] let me ask you this. Does his [ASPD] [a]ffect his decisions in using illegal drugs, s[t]imulants such as methamphetamine?

"[DR. MUSACCO]: I would say, yes.

"THE COURT: And then. Okay. Is there … is one of these—any one of these 4 predominant do you think or just all intermixed?

"[DR. MUSACCO]: I think it is day-by-day, hour-by-hour. But the Borderline Intellectual Functioning and [ASPD] are both, they are kind of steady ongoing issues. They don't spike or plateau the way the substance use disorder would or the [p]sychosis would. So—so his personality disorder is an ingrained chronic condition that we wouldn't expect again based on the eval[uation]. Same with Borderline Intellectual Functioning, he's not going to get smarter or less smart[] day 1 to day 2. But if he's using drugs … or hearing v[o]ices, we can anticipate that his function will decline due to those added stressor[s]. So again, it is kind of a—it is like a ball [of] string and you pull one out, but you can't entirely separate it from the ball as you have it."

When asked on redirect to characterize ASPD, Dr. Musacco explained the diagnosis for ASPD is characterized as "a pattern of criminal behavior, ignoring rules, or being willing to violate rules, neglecting obligations. You know, when we think about a typical person who is a revolving door of prison in jail, a vast—well, at least a majority of those persons have [ASPD]. Meaning, they have characteristically violated rules and [norms] and expectations to their detriment and the detriment of those around them."

## C. Denial of Diversion and Petitioner's Writ Petitions

The court denied the motions for diversion, noting Dr. Musacco's opinion that petitioner's qualifying disorders were all interrelated with his ASPD. The court ruled petitioner is statutorily ineligible for mental health diversion under section 1001.36 because he suffers from ASPD, an excluded condition. The court explained that although petitioner has three other eligible conditions, the fourth diagnosis for ASPD operated as a bar to eligibility.

6.

Petitioner filed a petition for a writ of mandate in both underlying cases to vacate the court's order and grant his motions for admission into a mental health diversion program under section 1001.36.

## DISCUSSION

Petitioner's central argument is that he suffers from qualifying mental health disorders under section 1001.36(b)(1)(A), which the court acknowledged. According to petitioner, the fact that he also suffers from ASPD does not make him per se ineligible for diversion under section 1001.36, and the court erred in concluding otherwise. Moreover, petitioner maintains, he has satisfied all of the requirements for diversion under section 1001.36 and his motions for diversion should be granted.

The Attorney General filed responses to the petitions on behalf of the People, the real party in interest. The Attorney General agrees that the trial court erred in denying diversion on the ground petitioner suffers from ASPD—the fact petitioner has been diagnosed with an excluded mental disorder does not bar him completely from diversion when he also suffers from other qualified mental health disorders. Moreover, according to the Attorney General, the court's order did not address whether petitioner's qualifying mental disorders were a significant factor in the charged offenses and whether the mental disorders motivating the criminal behavior would respond to treatment. (See § 1001.36, subd. (b)(1)(B) & (C).) The Attorney General urges this court to grant the petition for a writ of mandate, vacate the trial court's denial of diversion, and remand for another hearing to determine petitioner's eligibility for diversion.

## I.     Mental Health Diversion Under Section 1001.36

Effective June 27, 2018, the Legislature enacted a diversion program for defendants with diagnosed and qualifying mental disorders such as schizophrenia, bipolar disorder, and posttraumatic stress disorder. (§ 1001.36, subd. (a).) One of the stated purposes of the legislation was to promote "[i]ncreased diversion of individuals with mental disorders … while protecting public safety." (§ 1001.35, subd. (a).)

7.

"'[P]retrial diversion' means the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment .…" (§ 1001.36, subd. (c).) "If the defendant has performed satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion." (*Id.*, subd. (e).)

"On an accusatory pleading alleging the commission of a misdemeanor or felony offense, the court may, after considering the positions of the defense and prosecution, grant pretrial diversion … if the defendant meets all of the requirements .…" (§ 1001.36, subd. (a).) There are six requirements. (*Id.*, subd. (b)(1)(A)–(F).)

First, the court must be "satisfied that the defendant suffers from a mental disorder as identified in the most recent edition of the [DSM], including, but not limited to, bipolar disorder, schizophrenia, schizoaffective disorder, or post-traumatic stress disorder, but excluding [ASPD], borderline personality disorder, and pedophilia." (§ 1001.36(b)(1)(A).) "Evidence of the defendant's mental disorder shall be provided by the defense and shall include a recent diagnosis by a qualified mental health expert." (*Ibid.*)

Second, the court must also be "satisfied that the defendant's mental disorder was a significant factor in the commission of the charged offense." (§ 1001.36, subd. (b)(1)(B).) "A court may conclude that a defendant's mental disorder was a significant factor in the commission of the charged offense if, after reviewing any relevant and credible evidence, … the court concludes that the defendant's mental disorder substantially contributed to the defendant's involvement in the commission of the offense." (*Ibid.*)

Third, "a qualified mental health expert" must opine that "the defendant's symptoms of the mental disorder motivating the criminal behavior would respond to mental health treatment." (§ 1001.36, subd. (b)(1)(C).)

Fourth, subject to certain exceptions, the defendant must consent to diversion and waive his or her right to a speedy trial. (§ 1001.36, subd. (b)(1)(D).) Fifth, the defendant must agree "to comply with treatment as a condition of diversion." (*Id.*, subd. (b)(1)(E).)

Finally, the court must be "satisfied that the defendant will not pose an unreasonable risk of danger to public safety … if treated in the community." (§ 1001.36, subd. (b)(1)(F).)

If a trial court determines that a defendant meets the six requirements, then the court must also determine whether "the recommended inpatient or outpatient program of mental health treatment will meet the specialized mental health treatment needs of the defendant." (§ 1001.36, subd. (c)(1)(A).) The court may then grant diversion and refer the defendant to an approved treatment program. (*Id.*, subd. (c)(1)(B).) "The period during which criminal proceedings against the defendant may be diverted shall be no longer than two years." (*Id.*, subd. (c)(3).) If the defendant commits additional crimes, or otherwise performs unsatisfactorily in diversion, then the court may reinstate criminal proceedings. (*Id.*, subd. (d).) However, if the defendant performs "satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings .…" (*Id.*, subd. (e).)

The Legislature amended section 1001.36 a few months after it was enacted "to specify that defendants charged with certain crimes, such as murder and rape, are ineligible for diversion." (*People v. Frahs* (2020) 9 Cal.5th 618, 627; see § 1001.36, subd. (b)(2).)

## II.     Mental Health Diversion Eligibility Under Section 1001.36(b)(1)(A)

Among other mandatory prerequisites, diversion may be granted if a defendant establishes under section 1001.36(b)(1)(A) that he or she "suffers from a mental disorder

as identified in the most recent edition of the [DSM], including, but not limited to, bipolar disorder, schizophrenia, schizoaffective disorder, or post-traumatic stress disorder, but excluding [ASPD], borderline personality disorder, and pedophilia." (§ 1001.36(b)(1)(A).)

The central question presented is whether a diagnosis for ASPD—an excluded disorder—renders petitioner statutorily ineligible for mental health diversion under section 1001.36(b)(1)(A) even though the court concluded petitioner has three other qualifying mental health disorders.

### A. Standard of Review

A trial court's factual findings under section 1001.36 must be supported by substantial evidence, and the court's diversion eligibility determinations are reviewed for an abuse of discretion. (*People v. Oneal* (2021) 64 Cal.App.5th 581, 588–589 [reviewing under abuse of discretion standard whether the defendant's disorder played a significant role in the commission of charged offense]; *People v. Moine* (2021) 62 Cal.App.5th 440, 448–449 [whether the defendant posed unreasonable risk of danger to public safety if treated in the community reviewed for abuse of discretion].)

The question posed here, however, is one that turns on an issue of statutory interpretation and the application of that statute to undisputed facts: whether a person diagnosed with both qualifying *and* excluded mental health disorders is statutorily ineligible for diversion under the language of section 1001.36(b)(1)(A). Our review of this issue is de novo. (*People v. Prunty* (2015) 62 Cal.4th 59, 71 [statutory interpretation]; *People v. Chubbuck* (2019) 43 Cal.App.5th 1, 7 [application of statute to undisputed facts is a question of law subject to de novo review].)

### B. Petitioner is Not Statutorily Ineligible for Diversion

Petitioner and the Attorney General maintain section 1001.36(b)(1)(A) does not establish a bar to diversion based on the presence of an excluded disorder, such as ASPD. They argue section 1001.36(b)(1)(A) merely limits the types of disorders a defendant

may use to carry his or her burden of establishing a qualifying disorder. In other words, a defendant satisfies section 1001.36(b)(1)(A) so long as he or she suffers from a qualifying disorder, even if he or she is also diagnosed with an excluded disorder. According to petitioner and the Attorney General, the trial court improperly treated petitioner's ASPD diagnosis as a bar to diversion rather than simply recognizing that this diagnosis could not be used to satisfy the requirement of section 1001.36(b)(1)(A).

The trial court obviously interpreted section 1001.36(b)(1)(A) differently and concluded that petitioner is statutorily ineligible for diversion, regardless of his other qualifying mental disorders, because he suffers from ASPD—an excluded disorder. The trial court is not alone in interpreting the statute to entirely preclude diversion for those defendants who suffer from an excluded disorder listed in section 1001.36(b)(1)(A). As one treatise has noted, "[t]he plain meaning of the statute suggests the Legislature intended to exclude persons with [ASPD], borderline personality disorder, and pedophilia, whether the person also suffers from other, qualified disorders." (Couzens et al., Cal. Practice Guide: Sentencing California Crimes (The Rutter Group 2021) § 7:22).)

Despite these differing interpretations of section 1001.36(b)(1)(A), the language strikes us as unambiguous. Section 1001.36(b)(1)(A) requires the defendant to establish he or she suffers from "*a* mental disorder" identified in the most recent edition of the DSM and then provides a nonexhaustive list of included disorders that suffice, followed by a list of excluded disorders that do not. (§ 1001.36(b)(1)(A), italics added.) Listing included and excluded disorders in this format simply articulates which disorders may and may not serve to prove the defendant has at least *one* qualifying mental disorder.

It is entirely predictable, and thus certainly within the contemplation of the Legislature, that a person might suffer from included *and* excluded disorders. Because section 1001.36(b)(1)(A) requires suffering only *one* included disorder, the Legislature would have been aware a defendant could still meet that requirement notwithstanding suffering from a disorder section 1001.36(b)(1)(A) designates as excluded. Had the

11.

Legislature intended to wholly preclude from diversion any person diagnosed with an excluded disorder (regardless of concurrently suffering from included disorders), the sentence phrasing of section 1001.36(b)(1)(A) would have shifted from simply listing excluded *disorders* to disqualifying *persons* with any of the excluded disorders.

But even assuming the language of section 1001.36(b)(1)(A) was ambiguous in this regard, the result is no different. One of the stated purposes of title 6, part 2, chapter 2.8A of the Penal Code, of which section 1001.36 is a part, is to increase diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety. (§ 1001.35, subd. (a).) This purpose militates an interpretation of section 1001.36(b)(1)(A) that fosters more inclusivity in diversion eligibility, not less. Wholly eliminating diversion eligibility for defendants who suffer from qualifying disorders because they *also* suffer from an excluded disorder does not further this purpose.[4] Rather, it potentially excludes a wide swath of defendants who otherwise suffer from qualifying disorders that could be amenable to treatment, and whose entry and reentry into the criminal justice system might be mitigated. (See *People v. Cornett* (2012) 53 Cal.4th 1261, 1265 [if statute is ambiguous, courts may consider other aids such as the statute's purpose].) Section 1001.36(b)(1)(A) simply disallows defendants from establishing eligibility for diversion based on an excluded disorder. Suffering from an excluded disorder does not categorically bar defendants from establishing eligibility based on a different, qualifying disorder.

We conclude that because petitioner suffered from eligible, qualifying mental disorders that the court accepted as proven, petitioner's additional diagnosis for ASPD,

---

[4]     At the hearing, Dr. Musacco estimated "at least a majority" of incarcerated persons suffer from ASPD. It is not clear whether that estimate is based on the diagnostic criteria of ASPD laid out in the most recent edition of the DSM, but it underscores how eliminating all eligibility for those suffering from ASPD *and* other included mental conditions would likely have an expansive excluding effect.

12.

an excluded disorder, did not render him statutorily ineligible under section 1001.36(b)(1)(A). Denial of diversion eligibility merely because of the existence of an excluded disorder was incorrect.

## III. A New Diversion Eligibility Hearing is Required

As the trial court rested its denial of diversion on ineligibility under section 1001.36(b)(1)(A), the court did not consider the remaining diversion eligibility prerequisites. For example, the court did not consider whether the qualified disorders were significant factors in the commission of the offenses and whether the qualified disorders motivating the criminal behavior were treatable. (§ 1001.36(b)(1)(B) & (C).) These determinations may be more difficult with diagnoses for included and excluded disorders. Dr. Musacco explained he had considered petitioner's qualifying mental disorders in isolation from his ASPD, but he acknowledged he could not neatly separate petitioner's behavior by disorder—one disorder might exacerbate others and together cause a behavioral function decline. In the context of Dr. Musacco's opinion, the trial court alluded to the complexity of assessing which disorder contributed to petitioner's criminal conduct and whether that disorder would respond to treatment. A new eligibility hearing is required for the court to consider these and all other remaining eligibility prerequisites under section 1001.36(b)(1).

We express no opinion how the trial court should evaluate the remaining eligibility requirements, including the interrelationship among included and excluded disorders for the purposes of section 1001.36, subdivision (b)(1)(B) and (C), or whether petitioner's motion for diversion should be granted.

13.

# DISPOSITION

Petitioner's request for a writ of mandate is granted as follows:  the trial court's order denying diversion is vacated, and the matter is remanded for a new hearing in accordance with this opinion on petitioner's motion for mental health diversion.

MEEHAN, J.

WE CONCUR:

SMITH, Acting P. J.

SNAUFFER, J.

14.