Filed 2/15/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GUADALUPE MOLINA PACHECO,<br><br>    Defendant and Appellant. | 2d Crim. No. B311538<br>(Super. Ct. No. 2020023820)<br>(Ventura County) |

About 2,000 years ago, one of history's first legal scholars, Cicero, gave us the Latin phrase: "Salus populi suprema lex esto." The English translations vary but in legal contemplation, it has one accepted translation: "The safety of the community is the highest law." (Gilmer, Cochran's Law Lexicon (5th ed. 1973) p. 265.) The wisdom of this principle remains as evident today as it was 2,000 years ago. Here, the trial court used common sense to implement this principle by denying pretrial mental health diversion to appellant, who suffers from schizophrenia and is addicted to methamphetamine. While under the influence of methamphetamine, using a cigarette lighter and an accelerant, appellant intentionally set fire to dried vegetation in a populated

rural area during the late summer fire season. In view of the wildfire crisis in California, we should know that this combination of facts and circumstances is rife with the probability of widespread property destruction and loss of life. The trial court was unwilling to gamble with the safety of the community. In the exercise of its sound discretion, it ruled that criminal conviction with formal supervised probation, instead of diversion, was appropriate. As we shall explain, we are in agreement.

Guadalupe Molina Pacheco appeals from the judgment entered after he pleaded guilty to arson of forest land in violation of Penal Code section 451, subdivision (c).[1] The trial court suspended the imposition of sentence and placed appellant on formal probation on condition that he serve 330 days in Ventura County Jail with credit for 325 days served. As a further condition of probation, he was released to Telecare Corporation, a mental health facility.

Appellant contends that the trial court abused its discretion in denying his request for pretrial mental health diversion pursuant to section 1001.36. The denial was based on the court's finding that he posed an unreasonable risk of danger to public safety.

We vacate sentencing fees imposed contrary to Assembly Bill 1869 (A.B. 1869, 2019–2020 Reg. Sess.). In all other respects, we affirm.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

*Factual Background*

In August 2020 appellant set fire to brush in a river bed near a homeless encampment and a ranch. The fire burned "approximately three acres of native vegetation" and damaged some avocado trees. The Ventura County Fire Protection District requested restitution of $27,476.04 to cover the cost of extinguishing the fire. The probation report noted: "[A]pproximately 15 units responded from several local Ventura City Fire departments, in addition to two large Blackhawk helicopters, and a specialized airplane."

Appellant told sheriff's deputies that he had "heard voices in his head tell him to start a fire in the river bottom where he lived. He then lit [two BIC] lighters and sprayed a hairspray can into the brush, starting the fire." An arson report "concluded that the cause of the fire was 'a handheld open flame device applied to a receptive fuel bed of dried vegetation.'"

Dr. Randy Wood, a clinical psychologist, prepared an evaluation of appellant's mental health. Appellant told Dr. Wood that "he has been hearing . . . voices since he was a child and tries to hide it from other people so he won't be judged as 'sick in the head' or mentally ill." Before starting the fire, "he had been hearing voices that day from 'Smurfs' and they told him that 'his ex-wife . . . had been taken by some men into the forest and they were going to do bad things to her.' . . . [T]he voices told him to 'go light up the forest to help her get away from the bad men,' so he lit the hairspray to start the brush on fire to enable her to escape to safety." But during an interview conducted by a probation officer, appellant said he had lit "a fire so he could smoke methamphetamine."

3

On the day of the arson, deputies concluded that appellant was under the influence of a controlled substance. "[A] urinalysis . . . confirmed he was under the influence of methamphetamine."

Appellant was 30 years old when he set the fire. He "reported that he has been using methamphetamine on a daily basis since the age of 16 and is a chronic user. He has had previous arrests for being under the influence of methamphetamine . . . ." According to Dr. Wood, "[h]is pattern of methamphetamine use meets the DSM-5 criteria for a diagnosis of 'Stimulant Use Disorder, severe, currently in a controlled environment' . . . ."

Dr. Wood also diagnosed appellant as suffering from schizophrenia. Dr. Wood noted, "[H]e has been in a controlled setting while in custody . . . and has had four months of not using methamphetamine and has been observed . . . to be having frequent auditory hallucinations, talking to himself and laughing, and describing ongoing conversations with 'Smurfs.'"

Dr. Wood opined that, if certain conditions are met, appellant "will not pose an unreasonable risk of danger to public safety if treated in the community." (Underlining omitted.) Dr. Wood explained: "[Appellant] does not have any history of other incidents of arson behavior and doing something like this seems very atypical and uncharacteristic of him. His act of arson w[as] likely due to being psychotic and delusional at the time. He is willing to take antipsychotic medications which control these symptoms. If he remains compliant with taking this medication regimen, and does not use any methamphetamine, then he would be unlikely to reoffend. It is the clinical opinion of this examiner that, as long as he takes his psychiatric medication on a consistent basis, and stays abstinent from using

4

methamphetamine, he would not likely pose an unreasonable risk of danger to public safety if treated in the community. However, if he does not take his antipsychotic medication as prescribed and/or returns to using methamphetamine, then he would become unstable and psychotic and be likely to reoffend in some bizarre manner."

*Probation Report*

The probation report states: "[Appellant's] actions of starting a large brush fire near a highly populated homeless encampment, and a large ranch . . . , epitomizes the danger that [he] poses to the community. [Appellant] has a prior record that consists mostly of misdemeanor drug convictions that reveal a pattern of drug use and addiction that spans nearly a decade. Of major concern is that [appellant] said he lit the fire so that he could smoke methamphetamine. It appears his drug use definitely played a significant role in the present matter. Although the effects of drug use may have influenced [appellant's] actions, the fire he set caused a lot of damage, and it could very well have caused injuries to anyone nearby, or even worse, loss of human life."

*People's Opposition*

The People opposed mental health diversion because appellant "poses an unreasonable risk of danger to public safety." The People argued: "Due to [appellant's] underlying mental health disorder, coupled with his drug use, [he] had auditory commands telling him to start a fire; which he obeyed." "[Appellant] will not comply with treatment as evidenced by the fact that he has seemingly been self-medicating with methamphetamine since the age of 16."

5

*Trial Court's Ruling*

At the hearing on appellant's request for diversion, defense counsel told the trial court that Dr. Erin Haven, a "clinical director" at Telecare Corporation, had "personally arranged for [appellant's] treatment" should he be granted diversion. Dr. Haven's "assessment and evaluation of [appellant] is that he would do best in an outpatient setting living with his aunt in Santa Paula where he can continue to work . . . ." Counsel stated, "I believe that just a simple medication could ensure the public safety here."

The trial court said: "Although it appears that [appellant] meets the [diversion] criteria, my tentative would be to deny it in this instance. And I'll tell you why. Because the offense that brings him before the Court is arson. That is the starting the brush fire intentionally," although his acts were "clearly a result of some psychological condition or at least that's certainly what it appears to be." The court explained, "I can and do take judicial notice of how dangerous brush fires are and have been to this community in particular, and given these current climate conditions and the likelihood or possibility that such conduct could create a mass-casualty event is not small. And had this been a different type of offense I would probably be inclined to grant the motion."

Defense counsel objected, but acknowledged that "brush fires have devastated and ravished through Ventura County, especially with [the] Thomas Fire, and throughout this state, and I know the Court might be hesitant to have any hand in allowing something like that to happen in the future."[2] "However,"

---

[2] Pursuant to Evidence Code sections 452, subdivision (h) and 459, subdivision (a), we take judicial notice that, when the

6

counsel continued, "we can't restrain [appellant] for his whole life prospectively. He will be out in the community at some point and I believe that if we can get him at this juncture into mental health treatment where he keeps over his head the chance of a felony conviction and going to prison that he is in a good position not to reoffend and to participate in treatment."

The trial court rejected counsel's argument in favor of diversion. It ruled that appellant poses an unreasonable risk to public safety if treated in the community without criminal conviction and supervised probation.

*Mental Health Diversion*

"Section 1001.36 gives trial courts the discretion to grant pretrial diversion for individuals suffering from certain mental health disorders." (*People v. Frahs* (2020) 9 Cal.5th 618, 626.) "A trial court may grant pretrial diversion under section 1001.36 if the court finds: (1) the defendant suffers from a qualifying mental disorder; (2) the mental disorder was a 'significant factor' in the commission of the charged offense; (3) a qualified mental health

---

trial court denied diversion in January 2021, Ventura County was in the middle of a record-breaking drought <https://www.vcstar.com/story/news/2021/09/30/california-drought-ventura-county-cities-mark-driest-year-record/5832057001> [as of Jan. 6, 2022], archived at <https://perma.cc/U8Gb-5MVL>. We also take judicial notice that the Thomas Fire "was a massive wildfire that affected Ventura and Santa Barbara Counties . . . in December 2017. It burned approximately 281,893 acres (440 sq mi; 114,078 ha) before being fully contained on January 12, 2018, making it the largest wildfire in modern California history at the time" <https://en.wikipedia.org/wiki/Thomas_Fire> [as of Jan. 6, 2022], archived at <https://perma.cc/2NP7-CZYJ>.

7

expert opines the defendant's symptoms will respond to treatment; (4) the defendant consents to diversion and waives his or her speedy trial rights; (5) the defendant agrees to comply with the treatment as a condition of diversion; and (6) [the criterion at issue here] *'the defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community*.' (§ 1001.36, subd. (b)(1)(A)-(F).)" (*People v. Moine* (2021) 62 Cal.App.5th 440, 447-448 (*Moine*), italics added.)

As to the sixth criterion, "[s]ection 1170.18 . . . defines 'unreasonable risk of danger to public safety' as 'an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667.' (§ 1170.18, subd. (c).) The violent felonies encompassed in this definition 'are known as "super strikes" and include murder . . . .'" (*Moine, supra*, 62 Cal.App.5th at p. 449.) The list does not include arson of forest land. But this is not determinative. The list speaks to crimes that may be committed in the future. "All murder . . . that is committed in the perpetration of . . . arson . . . is murder of the first degree." (§ 189, subd. (a).) Thus, a person would commit a super strike – first degree murder – if he intentionally set fire to forest land and an unintended death occurred as a result of the arson.

*Standard of Review*

We review the trial court's denial of mental health diversion for abuse of discretion. (*Moine, supra*, 62 Cal.App.5th at p. 448.) "'"[T]he term judicial discretion 'implies absence of arbitrary determination, capricious disposition or whimsical thinking.'" [Citation.] "[D]iscretion is abused whenever the court exceeds the bounds of reason, all of the circumstances being considered."'" (*People v. Hamlin* (2009) 170 Cal.App.4th 1412,

1450.) "It is appellant's burden on appeal to establish an abuse of discretion and prejudice." (*People v. Albarran* (2007) 149 Cal.App.4th 214, 225.)

*No Abuse of Discretion*

The trial court did not exceed the bounds of reason in finding that appellant had failed to satisfy the sixth criterion for pretrial mental health diversion – if treated in the community, he would not pose an unreasonable risk to public safety within the meaning of section 1170.18. Dr. Wood opined that, "as long as [appellant] takes his psychiatric medication on a consistent basis, and *stays abstinent from using methamphetamine,* he would not likely pose an unreasonable risk of danger to public safety if treated in the community." (Italics added.) "[T]he use of methamphetamine would likely exacerbate his psychotic symptoms."

The record supports a reasonable belief that appellant will not refrain from using methamphetamine if he is treated in the community without conviction and supervised probation. Mental health diversion may provide some motivation for remaining drug-free and compliant with treatment for mental illness. In theory, felony probation with state prison "hanging over his head," will provide even more motivation. Appellant told Dr. Wood that he "would comply with taking medication prescribed by a psychiatrist, attend a treatment program and would stop using any methamphetamine." But before committing the arson offense, appellant had used "methamphetamine on a daily basis since the age of 16," i.e., for the previous 14 years. His prior arrests for being under the influence of methamphetamine had not deterred him from continuing his abuse of the drug. Because

9

of his 14-year history of chronic methamphetamine abuse, his resolve to stop using the drug is dubious.

Dr. Wood opinion that if appellant "returns to using methamphetamine, then he would become unstable and psychotic and be likely to reoffend in some bizarre manner." The voices that allegedly told him to start the brush fire could return and direct him to start another similar fire. Or, based on his statement to a probation officer that he had lit "a fire so he could smoke methamphetamine," appellant could start another fire for the same purpose. In view of the extreme drought conditions in Ventura County at the time of the trial court's denial of diversion, a similar fire could have had a devastating effect. (See *ante*, pp. 6-7, fn. 2.) The fire could have spread and caused the death of persons living in the area or fire department personnel fighting the fire. According to the probation report, appellant started the brush fire "near a highly populated homeless encampment."

Thus, the trial court acted within its discretion in declining to conclude that appellant "will not pose an unreasonable risk of danger" of committing a "super strike" – arson murder – if treated in the community pursuant to pretrial mental health diversion. (§ 1001.36, subd. (b)(1)(F).)

*Sentencing Fees*

The People note that "the record is unclear as to which [sentencing] fees were imposed or struck." It appears that the trial court imposed, but stayed because of inability to pay, a $2,121 presentence investigation fee (former § 1203.1b), a $107 monthly probation supervision fee (*ibid.*), and a $481.76 criminal justice administrative fee (former Gov. Code, §§ 29550.1-29550.3). Appellant claims, and the People concede, that these fees must be vacated pursuant to A.B. 1869. We agree. A.B. 1869 added

10

section 1465.9 and Government Code section 6111, which provide that on and after July 1, 2021, the unpaid balance of such fees imposed by the court "shall be unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated."  (§ 1465.9, subd. (a); Gov. Code, § 6111, subd. (a).)

*Disposition*

The order imposing a $2,121 presentence investigation fee (former § 1203.1b), a $107 monthly probation supervision fee (*Ibid*.), and a $481.76 criminal justice administrative fee (former Gov. Code, §§ 29550.1-29550.3) is vacated.  In all other respects, the judgment is affirmed.

CERTIFIED FOR PUBLICATION.


                                              YEGAN, J.

We concur:


        GILBERT, P. J.


        TANGEMAN, J.


11

David R. Worley, Judge

Superior Court County of Ventura

_____


Nancy Wechsler, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Michael R. Johnsen, Supervising Deputy Attorney General, Yun K. Lee, Deputy Attorney General, for Plaintiff and Respondent.