Filed 4/26/22  P. v. Venturine CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MARK ANTHONY VENTURINE,<br><br>Defendant and Appellant. | 2d Crim. No. B311624<br>(Super. Ct. Nos. 2018004449, 2019027003, 2019033455)<br>(Ventura County) |

Mark Anthony Venturine appeals the judgment entered after he pleaded no contest to five counts of making criminal threats (Pen. Code,[1] § 422), and one count each of inflicting corporal injury on a current or former cohabitant (§ 273.5, subd. (a)) and stalking (§ 646.9, subd. (b)).  Appellant also admitted a prior strike and serious felony conviction (§§ 667, subds. (a)(1),

---

[1] All further undesignated statutory references are to the Penal Code.

(c)-(e), 1170.12, subds. (a), (c)). The trial court sentenced him to 10 years in state prison.[2]

Appellant, who has been diagnosed with mental disorders including obsessive compulsive disorder and alcohol use disorder, contends the court abused its discretion in denying his request for mental health diversion under section 1001.36. We conclude the request was properly denied because appellant failed to present a qualified mental health expert's opinion that appellant's "symptoms of the mental disorder motivating the criminal behavior would respond to mental health treatment," as required under section 1001.36, subdivision (b)(1)(C). Accordingly, we affirm.

## FACTS AND PROCEDURAL HISTORY

In December 2017, appellant and his girlfriend Pauline M. got into an argument after she saw a text message from another woman on his cellphone. After Pauline asked appellant to leave her house, he told her "he would start with [her] car, then he would ruin [her] house and then he would find [her] and kill [her]. And then he said he would break [her] son's neck." Appellant, who had been drinking alcohol, also pushed Pauline and punched a hole in her bedroom door.

In July 2018, appellant went to Pauline's house and told her he was "cleaning up his act" and was residing in a sober living facility. Appellant began drinking beer and yelled at Pauline, who asked him to leave. Appellant pushed Pauline to the ground, straddled her, and repeatedly punched her in the face and head. Pauline, who was bleeding from her head, nose, and

---

[2] Appellant pleaded no contest in three separate cases and his appeals in the three cases were consolidated for purposes of argument and decision.

ear, hit appellant with a flashlight in self-defense. Appellant told Pauline "I'm gonna kill you" and asked, "Where would you like me to bury your body?" Pauline ran to a neighbor's house and appellant told the neighbor, "You're next. I'm coming for you." Several hours after his release from jail in August 2018, appellant went to Pauline's place of employment and put a note on her car that said, "I'm out. Be careful."

In August 2019 Pauline saw appellant walking in front of her place of employment, in violation of a domestic violence restraining order. Appellant looked for Pauline's car but did not see it because she had driven her father's car to work that day.

Following his release from jail in August 2019, appellant began a dating relationship with Jillian N. Jillian allowed appellant to stay at her residence so long as he did not consume alcohol. In September 2019, Jillian found alcohol in the bathroom appellant used and asked him to leave. Appellant left without taking several of his items from the house. He subsequently sent Jillian numerous text and voicemail messages threatening to kill her. In one such message he stated: "I will find you and I will fucking kill you you understand I know where you work I know [where] your car is located I know where you sleep do you wanna fuck with me like this you son of a bitch I will destroy you I will fucking kill you and I will kill your son I will come get you I'm on my way right fucking now." Almost two months later, appellant sent Pauline text messages stating among other things "you are a dead wom[a]n walking you had to be very careful within this next couple days because I am right there behind you I will find you and I will fucking kill you."

Appellant was subsequently charged in case no. 2018004449 with three counts of making criminal threats (§ 422), battery (§ 243, subd. (e)(1)), and one count each of misdemeanor

3

vandalism (§ 594, subd. (b)(2)(A)), disobeying a domestic relations court order (§ 273.6, subd. (a)), and inflicting corporal injury on a current or former cohabitant (§ 273.5, subd. (a)). In case no. 2019027003, appellant was charged with stalking (§ 646.9, subd. (b)) and disobeying a domestic relations court order. In case no. 2019033455, appellant was charged with two counts of making criminal threats, one count of vandalism, and two counts of making annoying telephone calls (§ 653m, subd. (a)). It was further alleged in all three cases that appellant had a prior strike and serious felony conviction.

In September 2020, appellant filed a request for mental health diversion in all three cases pursuant to section 1001.36. In support of his request, appellant offered progress notes purportedly prepared by his psychiatrist, Dr. Nomi Fredrick, in September 2015. The notes state among other things that appellant had been diagnosed with major depression, persistent depressive order, obsessive compulsive order (OCD), alcohol use disorder, and mild neurocognitive disorder due to a traumatic brain injury (TBI).

Appellant reported that he began exhibiting symptoms of OCD when he was a teenager and was originally diagnosed with both OCD and borderline schizophrenia. He went to college on a football scholarship but was cut from the team due to his excessive drinking. After graduating from college, he successfully completed a residential treatment program and in 1997 he began working as a teaching assistant and football coach at Westlake High School. He subsequently suffered the TBI as the result of a 2000 car accident. Appellant "had multiple involuntary psychiatric hospitalizations over the years" and "was first psychiatrically hospitalized in his thirties" after sustaining his TBI. He also reported that when he was sober he experienced

4

"insistent checking, counting, rereading, rewriting and hand[]washing" and "spends over half his day checking and counting."

Appellant sought diversion based on his OCD and urged the court to find that that the disorder played a significant role in his commission of the charged offenses, as provided in subdivision (b)(2) of section 1001.36, because he has a documented history of drinking alcohol when he "loses control of his OCD." After noting that he had gone through 12 inpatient alcohol rehabilitation programs by 2015, appellant offered that "those that tried to help" him "often thought it was his alcoholism to blame. But truly, it was the change in circumstances (the ending of a program, the change in living situations, the lack of a structured environment) that would ignite his OCD causing him to self medicate with alcohol." Appellant also noted that he had told Dr. Fredrick "he plans alcoholic binges to escape from his OCD brain" and "does not know how to stop checking or counting without being intoxicated . . . ." Appellant added that "[the d]efense fears, . . . like so many people that tried to help [appellant] in the past, the Court will blame alcohol as the primary culprit, and although it is a factor, it is truly his mental illness driving his actions."

To satisfy the requirement that a mental health expert opine the symptoms of appellant's OCD would respond to mental health treatment (§ 1001.36, subd. (b)(1)(C)), appellant offered a March 2018 "client plan" prepared by Ricardo Juarez, his "case manager" at Ventura County Behavioral Health. Appellant stated "[i]t is [the] Defense's position, that this plan should be implemented in addition to a residential program." Appellant also attached a letter indicating he had been accepted into a residential alcohol and drug treatment program in Los Angeles.

5

In opposing appellant's request for mental health diversion, the prosecution noted that appellant had failed to provide a qualified mental health expert's opinion that the symptoms of appellant's mental illness that motivated his criminal behavior would respond to treatment as required under subdivision (b)(1)(C) of section 1001.36. The prosecution also asserted that appellant's OCD was not a significant factor in his commission of the charged offenses, and that his proposed treatment plan "is not specific enough" in that "[i]t doesn't address the medicine he would be taking or exactly what he would be doing to reach the goals they stated." Finally, the prosecution argued that appellant presented a danger to the public if released.

The court denied the request for mental health diversion following a hearing. The court reasoned: "I agree with the People. The plan appears to be lacking in specifics. He may very well be OCD, but it seems like there's something else going on here. But even beyond that, the behavior that's alleged to be exhibited here multiple times with the criminal history he's got, I completely understand the letters that these two alleged victims have submitted and why they would be fearful of him. And it's not just these two People. It seems like one of them, I think, he was in a relationship with for less than two weeks. So if he gets out, there could very well be additional victims."

Pursuant to a negotiated agreement, appellant subsequently pleaded no contest to various charges and admitted the prior conviction allegations in exchange for a 10-year prison sentence. After appellant filed notices of appeal in all three cases and the trial court issued certificates of probable cause, the appeals were consolidated for purposes of argument and decision.

6

## DISCUSSION

Appellant contends the trial court erred in denying his request for mental health diversion under section 1001.36. We conclude otherwise.

"Section 1001.36 authorizes courts to grant pretrial diversion to defendants who meet the statute's six qualifying criteria or eligibility requirements. . . . If mental health diversion is granted and the defendant satisfactorily completes the court's approved mental health treatment program, then the defendant's criminal charges are required to be dismissed and the defendant's arrest on the charges 'shall be deemed never to have occurred.' (§ 1001.36, subd. (e).)" (*People v. Gerson* (2022) 74 Cal.App.5th 561, 571-572 (*Gerson*).)

"The defendant bears the burden of making a prima facie showing that he or she meets the minimum requirements of eligibility for diversion. [Citations.] The court 'may' (§ 1001.36, subd. (a)) grant pretrial diversion if a defendant meets all six enumerated requirements: (1) the court is satisfied that the defendant suffers from a mental disorder identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM); (2) the court is satisfied the 'defendant's mental disorder was a significant factor in the commission of the charged offense'; (3) a qualified mental health expert opines 'the defendant's symptoms of the mental disorder motivating the criminal behavior would respond to mental health treatment'; (4) the defendant 'consents to diversion and waives [his or her] right to a speedy trial'; (5) the defendant 'agrees to comply with treatment as a condition of diversion'; and (6) the court is satisfied 'the defendant will not pose an unreasonable risk of danger to public safety . . . if treated in the community.' (§ 1001.36, subd. (b)(1)(A)-(F).) Even if a defendant otherwise

7

satisfies the six eligibility requirements, the court must also be satisfied that the recommended mental health treatment program 'will meet the specialized mental health treatment needs of the defendant.' (§ 1001.36, subd. (c)(1)(A); *People v. Frahs* (2020) 9 Cal.5th 618, 627.)" (*Gerson, supra,* 74 Cal.App.5th at p. 572.)

In an appeal from an order denying a request for mental health diversion, "'we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.]" (*Gerson, supra,* 74 Cal.App.5th at p. 573.) The trial court's decision cannot be rejected unless it amounts to an abuse of discretion. (*Ibid.*) "We therefore review for abuse of discretion the trial court's decision whether to grant a request for mental health diversion. [Citation.] 'A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence.' [Citation.]" (*Ibid.*) Even if the court's reasoning is erroneous, its ruling will be upheld if it is legally correct. (*People v. Harden* (2022) 76 Cal.App.5th 262, 264-265.)

The trial court did not abuse its discretion in denying appellant's request for mental health diversion. Appellant failed to present "the opinion of a qualified mental health expert" that appellant's "symptoms of the mental health disorder motivating the criminal behavior would respond to mental health treatment." (§ 1001.36, subd. (b)(1)(C).) Such an opinion is a "threshold" requirement for eligibility for diversion. (*People v. Frahs, supra,* 9 Cal.5th at p. 640.)

8

"A qualified mental health expert is someone, like a psychiatrist or psychologist, who is trained and experienced in diagnosing and treating mental health conditions." (*People v. Hines* (2020) 58 Cal.App.5th 583, 608 [addressing qualifications of expert to opine a defendant is incompetent to stand trial pursuant to § 1368].) Here, appellant merely offered a "client plan" prepared in March 2018 by Ricardo Juarez, his "case manager" at Ventura County Behavioral Health. Although the plan outlines appellant's treatment goals and objectives relating to his ongoing mental health treatment at that time, it does not include any expert opinions, much less any information establishing Juarez's expertise to offer such opinions. Because appellant did not offer the expert opinion required under subdivision (b)(1)(C) of section 1001.36, his request for mental health diversion pursuant to that statute was properly denied.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED.


PERREN, J.


We concur:


GILBERT, P.J.            YEGAN, J.


9

Anthony J. Sabo, Judge
Bruce A. Young, Judge
Superior Court County of Ventura

_____

Nancy Wechsler, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Gary A. Lieberman, Deputy Attorney General, for Plaintiff and Respondent.