Filed 4/17/23  P. v. Clark CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

----

|  |  |
|---|---|
| THE PEOPLE, | C096179 |
| Plaintiff and Respondent, | (Super. Ct. No. NCR96565) |
| v. | |
| CHRISTOPHER WILLIAM CLARK, | |
| Defendant and Appellant. | |

In January 2017, defendant Christopher William Clark pled guilty to robbery and admitted to being previously convicted of a strike offense, as well as two serious felonies. Consistent with the terms of his plea, the trial court sentenced defendant to an aggregate term of 20 years in prison.  Defendant appealed and the matter was remanded to allow the court to consider exercising its then-new discretion under Senate Bill No. 1393 (2017-

1

2018 Reg. Sess.) (Stats. 2018, ch. 1013, § 1) to strike either of the prior serious felony conviction enhancements. (*People v. Clark* (Nov. 8, 2019, C085301) [nonpub. opn.].)[1]

On remand, the trial court declined to exercise its discretion and defendant appealed again. On appeal this court affirmed the judgment but remanded the matter a second time, this time to allow defendant to seek mental health diversion under then-newly enacted Penal Code[2] section 1001.36. (*People v. Clark* (Dec. 15, 2021, C091846) [nonpub. opn.].)

Following an evidentiary hearing on remand, the trial court denied defendant's request for mental health diversion. The court found defendant's mental illness was not a significant factor in his criminal behavior and there was no evidence of a treatment program suitable to defendant's needs. Defendant appealed from that order.

While this appeal was pending, defendant filed a motion for supplemental briefing regarding the impact of Senate Bill No. 1223 (2021-2022 Reg. Sess.) (Stats. 2022, ch. 735, § 1), on defendant's mental health diversion claim. We granted the motion. Defendant filed a second motion for supplemental briefing regarding the impact of amended section 1170, subdivision (b) on his sentence. We granted that motion as well. The People concede defendant is entitled to remand so the trial court may consider both (1) diversion in light of the changes to section 1001.36 and (2) resentencing consistent with section 1170, subdivision (b).

---

[1]     Defendant's request for judicial notice, filed September 19, 2022, is granted as to items 1 and 9. The remaining requests are denied.

On March 6, 2023, the People asked this court to take judicial notice of the record on appeal in *People v. Clark* (Nov. 8, 2019, C085301) [nonpub. opn.]. That record, however, was already incorporated by reference on defendant's motion in July 2022. The People's request is, therefore, unnecessary. We deny it accordingly.

[2]     Undesignated statutory references are to the Penal Code.

We will affirm the trial court's order denying defendant's request for diversion, but remand for resentencing consistent with section 1170, subdivision (b).

FACTUAL AND PROCEDURAL BACKGROUND

On April 28, 2022, the trial court conducted a hearing on remand to determine whether to grant defendant mental health diversion pursuant to section 1001.36. Dr. Kent Caruso, a forensic clinical psychologist, testified as an expert witness who also personally assessed defendant. It was Dr. Caruso's opinion that defendant suffered from "bipolar disorder type two, depressive type." Dr. Caruso testified that, in his opinion, defendant's mental disorders were "likely to have contributed" to his criminal conduct.

Defendant also testified at the hearing. He described a life in "turmoil." He started using heroin in 1984; in 1986 he was convicted of stealing lawn mowers. He was convicted of stealing a lawn mower a second time in 2000. Between 2000 and 2012, defendant was in and out of custody. While he was in custody, defendant was treated for bipolar depression, but he did not seek treatment out of prison. In 2012, defendant moved to the Red Bluff area, but said he was not offered mental health treatment.

In 2014, defendant was experiencing homelessness; by 2015, he was suffering from multiple physical ailments but was not taking his medication. That same year, defendant started using methamphetamine. "Parole" recommended that defendant participate in a mental health treatment program; defendant ignored the recommendation.

In December 2015 defendant was taken to the Tehama Mental Health Crisis Unit (the crisis unit) by police officers. There, defendant was diagnosed with substance-induced psychotic disorder and the crisis unit recommended he get mental health treatment. Defendant was released from the crisis unit after approximately five hours and returned to his encampment behind a local bank. It was raining and cold. When he arrived at the encampment, defendant saw that someone had taken his belongings. Defendant lay down under a dumpster lid to rest, using cardboard and blankets for warmth. Before long, he left the encampment to find shelter and dry clothes.

3

Initially, defendant walked toward the river. Finding no relief from the storm, he turned and walked back toward town, to a store where defendant attempted to steal a long-sleeved shirt, a pair of gloves, and a box cutter. The assistant manager escorted defendant out of the store where defendant then got into an altercation with two store employees, leaving one employee with a bloody lip.

Defendant testified he "wasn't thinking clearly; just clear enough to try to get warm clothes, not clear enough to do it in an honest way." He thought maybe he was feeling the residual effects of methamphetamine. He was, however, very clear that his "one thought" was to get warm clothes. Defendant said he knew there were warm clothes in the store, so he went to the store and took the clothes. Then, after he fought with the employees, he walked to the store across the street to buy food.

Following the submission of evidence, the prosecution argued in closing that, among other things, the county did not have a mental health program that could "sustain" defendant: "There is a single outpatient program that is extremely new and it's intended specifically for misdemeanor offenses. There's been no evidence here what program the defendant would adhere to, how it would be monitored and they haven't even addressed where the defendant would live, how he would report."

Defense counsel responded: "[I]f [defendant] is placed in mental health diversion, . . . he may be referred to the county mental health agency, existing collaborative courts, assisted outpatient treatment programs or any other resources that are available, assuming those resources accept [defendant].

"[Section 1001.36] [a]lso allows [defendant] to seek and find his own independent program as well. We don't have the referral, we don't have an acceptance, that is true. [Defendant] has been in prison and unable to meet and be referred, assessed and evaluated by county mental health or collaborative court or outpatient treatment program here in Tehama County."

After considering the evidence and argument from counsel, the trial court denied defendant's request. In support of its decision, the court found defendant's "mental health issues" did not contribute to the commission of his crime. The court also found there was no evidence of a qualifying treatment program: "[T]here is no evidence that there was any recommended inpatient or outpatient program for mental health treatment that would meet the defendant's specific needs; that the lack of that evidence alone is the basis to deny the request.

"The code section requires, whether it's private or County, that the entity has agreed to accept responsibility for the treatment, and so we don't have any evidence of that. Some of that may be due to the fact that we're a rural county and we don't have as many resources, but even Dr. Caruso did not present any evidence that the local county health facility could provide the proper regulation and treatment. And there is no evidence that a provider would comply with the requirement that regular reports would be made to the Court."

Defendant appeals from that order.

## DISCUSSION

### I

### *Mental Health Diversion*

Defendant contends the trial court abused its discretion when it denied his request for mental health diversion. He raises two arguments in support of his contention: (1) there was insufficient evidence to support the trial court's finding that defendant's mental disorders did not contribute significantly to his crime; and (2) requiring defendant, who had been incarcerated prior to the hearing, to present a suitable treatment program "effectively" denied him "any relief under the new statute." (Capitalization, boldface, & underscoring omitted.) In supplemental briefing, he argues the recent amendments to section 1001.36 require remand. We disagree.

5

Section 1001.36 authorizes pretrial diversion for defendants with qualifying mental health disorders. (*People v. Frahs* (2020) 9 Cal.5th 618, 626-627.) Pretrial diversion is defined as "the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment, subject to all of the following: [¶] . . . The court is satisfied that the recommended inpatient or outpatient program of mental health treatment will meet the specialized mental health treatment needs of the defendant. [¶] . . . [¶] . . . The provider of the mental health treatment program in which the defendant has been placed shall provide regular reports to the court, the defense, and the prosecutor on the defendant's progress in treatment." (Former § 1001.36, subd. (c), (1)(A), (2), now § 1001.36, subd. (f)(1), (1)(A)(i), (1)(B), as amended by Sen. Bill No. 1223 (2021-2022 Reg. Sess.) (Stats. 2022, ch. 735, § 1), eff. Jan. 1, 2023.)

The parties agree section 1001.36, as amended by Senate Bill No. 1223 (2021-2022 Reg. Sess.), applies retroactively to defendant's appeal, which is not yet final.

A trial court's ruling on a request for mental health diversion is reviewed for abuse of discretion. (*People v. Williams* (2021) 63 Cal.App.5th 990, 1000; *People v. Moine* (2021) 62 Cal.App.5th 440, 448-449; see *People v. Frahs*, *supra*, 9 Cal.5th at p. 626.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

It is undisputed that neither defendant nor the prosecutor presented the trial court with any mental health treatment program for its consideration. Defense counsel so acknowledged in his closing statements to the court. Even after Senate Bill No. 1223's amendments to section 1001.36, it remains clear that for diversion to be an option, a mental health treatment program must be recommended to the court, and the court must be "satisfied that the recommended inpatient or outpatient program" meets the

6

defendant's particular needs. (§ 1001.36, subd. (f)(1)(A)(i), as amended by Stats. 2022, ch. 735, § 1.) Without evidence of a program, neither of these conditions precedent to granting diversion were met.

Defendant nevertheless argues the trial court erred in placing the burden on him, an incarcerated defendant, to produce evidence of an appropriate mental health treatment program. The statute is silent on whose burden it is to secure a program for diversion, suggesting either party can do so. (Cf. *People v. Banner* (2022) 77 Cal.App.5th 226, 235 [Legislature "crafted a scheme" that permits defendant or someone other than defendant to initiate diversion].) Moreover, nothing in the record suggests the court placed that burden on defendant. The court simply found no evidence of a program. As a result, we find the court acted within its discretion in denying defendant's request.[3]

II

*Section 1170, subdivision (b)*

A

*Additional Background*

In July 2017, the trial court sentenced defendant to an aggregate term of 20 years in prison, including the upper term of five years on the robbery conviction. The court stated on the record that it considered the probation report and the "documents filed by defendant" before reaching its decision.

Relying on the probation report, the court found the following aggravating factors: defendant had numerous prior convictions, failed parole "at least eight times," failed probation, failed community supervision, and was "on supervision at the time of the

---

[3] Because the trial court found two reasons to deny defendant's request, either of which provide sufficient basis for doing so, we need not decide whether there was sufficient evidence to find defendant's mental disorder did not contribute significantly to the commission of his crime.

crime." The court also found it relevant that a person was injured during the robbery, although, the court noted, the injury was not significant.

In mitigation, the court found defendant made an early admission of guilt and "was motivated by the desire to provide necessities." The court did not, however, find defendant's motivation to be a compelling mitigating factor. On balance, the court found the aggravating factors outweighed those in mitigation.

B

*Analysis*

In supplemental briefing, defendant argues the trial court erred in imposing the upper term for his robbery conviction because his prior convictions were not supported by a certified record of conviction, a stipulation, or a jury finding. The People concede that remand for resentencing is required. We accept the People's concession.

Under section 1170, the trial court may impose the upper term only if the facts underlying the aggravating circumstances that justify the upper term "have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).) The trial court, however, "may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).) A probation report is not a certified record of conviction. (*People v. Dunn* (2022) 81 Cal.App.5th 394, 403, review granted Oct. 12, 2022, S275655.)

Defendant did not stipulate to any factors in aggravation, nor did a jury find any aggravating factors to be true. The probation report is the only document in the record containing defendant's criminal history. We will not presume the existence of extrarecord materials supporting the trial court's findings about a defendant's criminal history. (*People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1115, fn. 6.)

8

We shall vacate the sentence and remand for the trial court to conduct a full resentencing in a manner consistent with section 1170, subdivision (b).  (See *People v. Buycks* (2018) 5 Cal.5th 857, 893.)  We express no opinion as to the ultimate sentence.

DISPOSITION

The trial court's order denying diversion pursuant to section 1001.36 is affirmed. The sentence, however, is vacated and the matter remanded for a full resentencing.


/s/
ROBIE, Acting P. J.



We concur:



/s/
MAURO, J.



/s/
BOULWARE EURIE, J.

9